Lavilia TOUSSAINT, Plaintiff,

v.

**PUBLIC HEALTH TRUST, Miami–Dade County, Defendants.**

**No. 01–4167–CIVSEITZ.**

United States District Court,
S.D. Florida.

July 28, 2003.

Leslie Holland, Leslie Holland, Coral Gables, FL, for Lavilia Toussaint, plaintiff.

William X. Candela, Dade County Attorney's Office, Miami, FL, for Miami–Dade County, Public Health Trust of Miami–Dade County, defendants.

### ORDER GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SEITZ, District Judge.

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment [DE–25]. Plaintiff Lavilia Toussaint ("Toussaint"), an African American, worked as a nurse for Jackson Memorial Hospital ("Jackson") from 1988 to 1994 and again after 1997 when she returned from an educational leave of absence. After learning that her pension plan had been changed from the Florida Retirement System ("FRS") to the Public Health Trust ("PHT"), Toussaint filed this one-count Complaint against Defendants PHT and Miami–Dade County (collectively "Defendants") for race discrimination in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, *et seq* ("Title VII"). Toussaint alleges that Defendants switched her pension plan because of her race and caused her monetary damages. Because Toussaint cannot show that Defendants' legitimate nondiscriminatory reason for the change in her pension plan is merely a pretext for racial discrimination, the Court will grant the Defendants' motion for summary judgment.

*Background*

## I. Employment Practices at Jackson Memorial Hospital—Pension Plan Rules

Jackson has several different working categories for its employees including full-time employment and pool employment. Kong Dep. at [11:22–12:3]. Full-time employees work a set schedule and are entitled to a pension plan and other benefits not available to pool employees. *Id.* at [17:6–10; 18:17–19:2]. Pool employees must call in and ask whether they are needed for work, and they work a sporadic schedule. *Id.* Usually, a form is filled out to notify someone that they are on pool status rather than full-time status and that they are losing the benefits of full-time status. *Id.* at [17:6–10].

Prior to January 1, 1996 the FRS pension plan covered full-time Jackson employees. *Id.* at [7:19–9:8]. Those full-time employees who have continuously worked for Jackson starting prior to 1996 remained covered by FRS. *Id.* All employees hired since January 1, 1996 are covered by the PHT plan, which replaced FRS. *Id.*

If a full-time employee left Jackson prior to January 1, 1996 and was later rehired after that date, she may be covered by either pension plan based on the specific facts involved. *Id.* at [11:20–12:3]. First, FRS will cover the employee if her "status" with Jackson never varied after she came back to Jackson after January 1, 1996. *Id.* In other words, if the employee was a full-time employee when she left Jackson, and was later rehired as a full-time employee, she would be covered by FRS. *Id.* Second, if an employee was working full-time when she left Jackson and was then rehired as a pool employee, then she does not have a pension plan because pool employees are not given that benefit. *Id.* at [11:20–12:3; 15:15–16:13, 18:17–19:2]. Third, if an employee switched from pool to full-time status after January 1, 1996, this switch places her in the PHT plan, not the FRS plan. *Id.*

## II. Toussaint's Experience

Toussaint, an African American, began work at Jackson as a full-time registered nurse in May of 1988. Toussaint Dep. at [4:15–19]. In May of 1994, Toussaint took an approved twenty-eight month educational leave of absence from Jackson to study at Barry University. *Id.* at [4:22, 6:1–12, 8:10]. Upon earning her Master's Degree in Anesthesiology in August of 1996, Toussaint contacted Jackson in an attempt to begin working there again. *Id.* at [11:2–4, 13:16–14:10]. Because Jackson was unable to offer her a position at that time, she accepted a position at Broward General Hospital as a nurse anesthetist in November of 1996. *Id.* at [11:2–6, 14:5]. Toussaint continued to ask Jackson about a position while she worked at Broward General. *Id.* at [14:20–15:21].

In 1997, upon learning about an available nurse anesthetist position at Jackson, Toussaint submitted a job application. *Id.* The application revealed that she worked at Broward General after completing her education. *Id.* at [25:3–5]. Kathy Cibula interviewed Toussaint, and told her that Jackson's pension plan had been changed. *Id.* at [16:3–9]. Cibula was uncertain about the change's impact on Toussaint. *Id.* Because of this uncertainty, Toussaint did not immediately accept the job. *Id.* Instead, she asked Mara Suarez–Requena ("Requena"), a personnel specialist with the Human Resource Department, for clarification of the effect of the pension switch. *Id.* at [16:17–17:15]. Requena told Toussaint that she would be changed from FRS to PHT. *Id.* at [18:10–15]. Requena explained that it "would not be a big change" for her. *Id.* She said that Toussaint's years with FRS would be incorporated into the PHT pension plan and thus

add to the amount of money Toussaint would receive. *Id.* Requena said that the PHT pension would vest after three more years of employment with Jackson at which time Toussaint would be guaranteed a pension. *Id.* at [21:1]. Based on this information and a hand-out provided and explained by Requena, Toussaint accepted Jackson's nurse anesthetist position. *Id.* at [21:9–22:22].

Toussaint began work at Jackson again on July 14, 1997. *Id.* at [23:2–7]. Toussaint thought she was a full-time employee and alleges that she never worked for Jackson as a pool nurse and never filled out any paperwork suggesting to her that she was a pool nurse. *Id.* at [23:8–15]; Toussaint Aff. at ¶ 4. Toussaint always received benefits, such as vacation and leave time, received by full-time employees and not by pool employees. *Id.* For the purposes of this motion, the Defendants do not dispute that Toussaint never actually worked as a pool nurse. (Def. Reply at 3).

In January 2001, having completed the three years Requena said would be necessary for her pension to vest, Toussaint made an appointment to see what her pension plan would pay her based on her total years worked under FRS and PHT. Toussaint Dep. at [27:1–10]. Toussaint discovered that Requena provided incorrect information in 1997. *Id.* at [27:17–20]. Toussaint learned that PHT only counts her years worked under the FRS plan for vesting purposes and not for calculating the amount of money that she would receive in her pension. *Id.* at [27:13–16]. Under the PHT plan, Toussaint will receive significantly less money from her pension then she would have received under the FRS plan. *Id.* at [35:1–12].

Although it is undisputed that Toussaint was never actually a pool nurse, both parties agree that Jackson's computer records indicate that Toussaint was classified as a pool nurse for a brief period before being rehired full-time on July 14, 1997. *Id.* at [42:8–21]; Kong Decl. at ¶ 3. Jackson's records erroneously show that Toussaint worked as a pool nurse from August 11, 1996 to January 12, 1997. Kong Decl. at ¶ 3. There is no evidence of why this record-keeping error occurred. Toussaint Dep. at [42:22–43:7]. This type of computer error can possibly arise from pressing the wrong number when inputting employment information into the computer. Kong Dep. at [21:3–4]. There is no direct evidence that the error indicating that Toussaint was a pool nurse was the result of racism, and Toussaint has stated that she has no reason to believe that race motivated the erroneous classification. Toussaint Dep. at [43:4–7, 44:17–21]. This brief classification as a pool nurse changed Toussaint's status and placed her in the PHT system instead of the FRS system. *Id.* at [43:16–24]; Kong Decl. at ¶ 3. Toussaint admits that she does not know the details of Jackson's personnel policies and that she has no reason to believe that Kong's explanation of why she has been placed in the PHT plan is an inaccurate representation of those policies. Toussaint Dep. at [45:15–46:1].

No one has ever made derogatory racial remarks to Toussaint in connection with this case and everyone that Toussaint has dealt with in connection to this dispute has acted with complete professionalism. *Id.* at [46:23–47:18]. Toussaint bases her claim on the fact that she was never actually a pool nurse, and therefore deserves to be covered by the FRS plan like Barbara Buczowski Gonzalez ("Gonzalez"), a Caucasian employee who Toussaint claims is similarly situated. *Id.* at [50:11–22].

### III. Gonzalez's Experience

Around the same time that Toussaint took her educational leave, Gonzalez took an educational leave as well. Gonzalez Dep. at [5:8–6:10, 17:10–14]. Gonzalez worked as a registered nurse at Jackson

from 1984 until June 18, 1993 when she took an approved educational leave of absence. *Id.* at [4:15–21, 6:8]. Before she took her leave, she was covered by FRS. *Id.* at [9:1–4]. During her leave, Gonzalez worked in Maine's Brighten Medical Center and at Baptist Hospital because there were no positions available at Jackson. *Id.* at [7:21–8:24]. She began working at Jackson again full-time in January 1997. *Id.* at [7:15, 13:14–16]. According to Kong, Gonzalez "did not submit an employment application and was not rehired. She did not have a break in service or a change of employment status. Her file does not reflect that she was employed elsewhere during or after her leave. Accordingly, she was entitled to continue in FRS and was not required to participate in PHT's plan." Kong Decl. at ¶ 5. Gonzalez was never a pool nurse and no records indicate that she was ever classified as a pool nurse. *Id.* Nobody at Jackson ever discussed a switch to PHT with Gonzalez, and she was continuously covered by FRS. *Id.* at [9:18–23, 11:22–12:9]. It is unknown who handled Gonzalez's return to Jackson.

## IV. Other Employees Placed in PHT When Returning to Jackson After January 1, 1996

Defendants point to three other employees to show a racially neutral administration of the pension plans. Kong Decl. at ¶ 4. All three employees resigned from Jackson before January 1, 1996 and were then rehired after that date. *Id.* All three employees were enrolled in the PHT plan and lost their enrollment under FRS. *Id.* Although none were nurses and none were enrolled in PHT because of a switch to a pool status, "[t]he benefits are generally the same for all employees." *Id.;* Kong Dep. at [7:11–12]. Of these three employees, two are Caucasian males and one was an African–American female. Kong Decl. at ¶ 4; Att. to Kong Decl. EEO–1 Employee Information for Kathleen Worthy at 1.

Based on these facts, Toussaint sued the Defendants under Title VII claiming that she is enrolled in the PHT plan instead of the FRS plan because of racism. The Defendants respond that Toussaint has failed to establish a prima facie case of discrimination. Alternatively, the Defendants contend that the reasons for Toussaint's enrollment in the PHT plan are legitimate nondiscriminatory reasons and that Toussaint cannot show that they are merely pretexts for discrimination. The Court turns to those arguments.

## *Analysis*

### I. Standard of Review

"Summary judgment is appropriate where there 'is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.'" *Knight v. Baptist Hosp. of Miami. Inc.,* 330 F.3d 1313, 1315–16 (11th Cir.2003) (citing Fed.R.Civ.P. 56(c)). All of the evidence is evaluated making "all reasonable factual inferences in the light most favorable to the nonmoving party." *Id.* "The question is whether ... there is evidence on which a jury could reasonably find a verdict for that party. In answering this question, a court must avoid weighing conflicting evidence or making credibility determinations." *Ikejiani v. Dade County Public Health Trust,* 2003 WL 1572333, at *1 (S.D.Fla.2003) (quotations omitted) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hilburn v. Murata Elec. N. Am., Inc.,* 181 F.3d 1220, 1225 (11th Cir. 1999)).

### II. Title VII Claim

#### A) Prima Facie Case:

Because Toussaint has presented no direct evidence of racism at Jackson, she must meet the requirements of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which

establishes the plaintiff's burden in a Title VII case. *See also Ikejiani,* 2003 WL 1572333, at \*5 (citing *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1331 (11th Cir. 1998)). Thus, Toussaint must present circumstantial evidence "sufficient to create an inference of discrimination." *Holifield v. Reno,* 115 F.3d 1555, 1564 (11th Cir. 1997). This inference arises only if Toussaint can show a prima facie case which requires that she prove that: (1) she belongs to a racial minority; (2) she was subjected to adverse job action; (3) her employer treated similarly-situated employees outside her classification more favorably; and (4) she was qualified to receive the benefit she was denied. *Knight,* 330 F.3d at 1315–16 (quotation omitted). This burden is not onerous. *Holifield,* 115 F.3d at 1562. Of course the Plaintiff's ultimate burden must be kept in mind: she must establish that her employer was actually motivated to change her pension plan because of her race. *Id.* at 1565.

The Defendants concede the first and second prongs of the prima facie case for discrimination: that Toussaint is a racial minority and that she was subjected to an adverse job action. In addition, the Defendants have effectively conceded the fourth prong as well by admitting that Toussaint was never actually a pool nurse and was always a full-time employee. Therefore, she never had a change in status that would require a switch from the FRS to the PHT system. (Def. Reply at 3); see *supra* p. 1292 (describing different pension policies). Thus, she is qualified to have the FRS pension plan because she was a full-time employee before January 1, 1996, and returned to full-time employment upon her return. The only prong for consideration is whether a similarly-situated employee outside of the class received better treatment. *Holifield,* 115 F.3d at 1561–62.

In analyzing the similarly-situated prong, there are two different times about which Toussaint claims discrimination. First, she claims that the Defendants are committing ongoing discrimination by refusing to let her continue under FRS instead of PHT ("Ongoing Discrimination Claim"). Second, Toussaint claims Defendants discriminated against her when she was rehired and the incorrect information regarding her pool status was inputted into the computer system ("Data Input Discrimination Claim").

### 1) Ongoing Discrimination—No Similarly–Situated Employee

Toussaint's Ongoing Discrimination Claim fails because she cannot show that there was a similarly-situated employee whom her employer treated better. *Holifield,* 115 F.3d at 1562. "In order to satisfy the similar[ly situated] prong, the comparator's [situation] must be nearly identical to the plaintiff's in order 'to prevent courts from second guessing employers' reasonable decisions and confusing apples with oranges.'" *Silvera v. Orange County School Bd.,* 244 F.3d 1253, 1259 (11th Cir.2001) (citation omitted).

Toussaint points to Gonzalez as a similarly-situated employee. However, for the purposes this claim, the question is whether Gonzalez has the same present qualifications as Toussaint, and is nonetheless receiving better treatment. Whether an employee was ever transferred to pool status is *relevant* to their pension plan. Because Gonzalez's employment file does not show that she was ever a pool employee but Toussaint's file does so indicate, they are not "similarly situated in *all relevant respects.*" *Silvera,* 244 F.3d at 1259 (citation omitted) (emphasis added). Therefore Toussaint has not shown a prima facie case of ongoing discrimination.[1] *See Knight,* 330

---

**1.** Even if Toussaint could establish a prima

facie case for ongoing discrimination, the

F.3d at 1318–19; *Holifield,* 115 F.3d at 1562.

### 2) Data Input Discrimination Claim Satisfies the Requirements for a Prima Facie Case

■■■ However, Toussaint has successfully shown that there is a similarly-situated employee with respect to her claim regarding the erroneous data entry about her status as a pool employee. Toussaint and Gonzalez, a white employee, were both nurses who took an educational leave before January 1, 1996, and both returned to work at Jackson after that date. Neither individual ever worked as a pool nurse, and both were on full-time status before leave and returned to full-time status when they returned. According to Peter Kong, Jackson's Benefits Manager, these are the only factors relevant to the Defendants when deciding who will be placed in FRS or PHT. Toussaint had incorrect information inputted into her file causing placement in PHT. Gonzalez received better treatment because she was allowed to stay in FRS. Therefore, Toussaint has successfully met the four requirements of a prima facie case of racial discrimination.[2] *Holifield,* 115 F.3d at 1564.

facts are that she is enrolled in the PHT plan because her computer file reads that she worked as a pool nurse. Whether or not she actually ever worked as a pool nurse, this proffered reason is a legitimate one having nothing to do with race. Therefore, the Defendants have proffered a legitimate nondiscriminatory reason that rebuts the Ongoing Discrimination Claim. See *infra* p. 10–12 (discussing how a defendant can rebut a prima facie case under Title VII and how Toussaint cannot show that the Defendants proffered reasons are a mere pretext for discrimination).

2. Defendants argue that Gonzalez and Toussaint are not similarly situated because Defendants did not know that Gonzalez had worked elsewhere during her leave. It is true that

### B) Defendants' Proffered Reason for the Pension Change:

■■ "Once [the plaintiff] has satisfied this burden, an inference of ... discrimination is created that [the Defendants] can rebut by articulating a legitimate nondiscriminatory reason" for the adverse action. *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991); *see McDonnell,* 411 U.S. at 802, 93 S.Ct. 1817. "This intermediate burden is exceedingly light." *Holifield,* 115 F.3d at 1564 (quotation marks omitted). It is a burden of production, not persuasion, and does not allow for credibility assessments by the court. *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citation omitted). The employer meets this burden merely by presenting "admissible evidence sufficient for the trier of fact to conclude that petitioner was fired because of" the employer's proffered legitimate nondiscriminatory reason. *Id.* "The employer may [commit an adverse action against] an employee for a good reason, a bad reason, *a reason based on erroneous facts,* or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d

unless the decision maker for the employer "knew of the events, the events cannot be considered in determining whether the comparators are similarly situated." *Knight,* 330 F.3d at 1317 n. 5. However, the "comparators need only be alike in all *relevant* respects." *Silvera,* 244 F.3d at 1259. There is no evidence that working elsewhere while on leave is relevant to which pension plan covers the employee, so the Defendants' lack of knowledge of this similarity is irrelevant.

The three other employees the Defendants point to as showing equal treatment are not similarly situated. One is an African–American female, and therefore not outside of Toussaint's race, and none were nurses returning from leave. These employees held administrative positions and resigned prior to returning after January 1, 1996.

1181, 1187 (11th Cir.1984) (citation omitted) (emphasis added).

The Defendants met this "exceedingly light" burden. *Holifield*, 115 F.3d at 1564. The Defendants explain how an erroneous record such as the one that placed Toussaint in PHT instead of FRS can result from computer error. This proffered reason is a legitimate nondiscriminatory reason that explains the error. Thus the Defendants have successfully shifted the burden to Toussaint to show that it is merely a pretext for discrimination. *Silvera*, 244 F.3d at 1258.

### C) Pretext Analysis:

### 1) Applicable Standard

The burden now shifts to the plaintiff to present "significant probative evidence that the articulated reason is merely a pretext for discrimination." *Elrod*, 939 F.2d at 1470. Toussaint can do this by either (1) showing that the employer's proffered reason is unworthy of credence or (2) showing that race more than likely motivated the employer to take the adverse action against the plaintiff. *Id.* (quotation omitted). Toussaint must have evidence showing that the legitimate nondiscriminatory reason was a mere pretext *and* "that the real reason for the rejection was based upon the plaintiff's membership in a protected class." *Ikejiani*, 2003 WL 1572333, at *5. In analyzing pretext, the Court "must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Silvera*, 244 F.3d at 1258 (11th Cir.2001) (citation omitted) (internal quotations omitted). "This demonstration merges with the plaintiff's ultimate burden of showing that the defendant intentionally discriminated against the plaintiff." *Holifield*, 115 F.3d at 1565

(citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). If the Defendants' belief was reasonable based on the information that it had available to it at the time of the decision, then no pretext has been shown. *Ikejiani*, 2003 WL 1572333, at *6. Even if the employer is wrong, "an employer who treats two employees differently because of a mistaken belief in the existence of a neutral reason does not violate Title VII." *Silvera*, 244 F.3d at 1261.

### 2) There is no Pretext Evidence to Rebut the Defendants' Showing of a Legitimate Non-Discriminatory Reason

Toussaint has presented no evidence that a person with a record of pool employment after January 1, 1996 has a right to be enrolled in FRS instead of PHT. She admits that she does not know the personnel requirements for enrollment in FRS and presents only conclusory allegations that the reasons given by the Defendants are not true. Toussaint Dep. at [50:17–22]. Such "'[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext.'" *Elrod*, 939 F.2d at 1471 (citation omitted). Toussaint has not exposed any weakness in the Defendants' assertion that employees with pool employment on their records after January 1, 1996 must be enrolled in PHT. Thus, she has failed to show that this proffered legitimate nondiscriminatory reason is a mere pretext for discrimination. *See Silvera*, 244 F.3d at 1258.

Furthermore, when asked: "Do you have any evidence that leads you to believe that erroneous information was placed in your personnel file or on the computer screen because of your race," Toussaint answered, "No, I do not." Toussaint Dep. at [44:17–21]. Without evidence that the Defendants' proffered reason for the data input discrimination is merely pretext, Toussaint cannot meet her ultimate burden

of showing that the Defendants "intentionally discriminated" against her. *Holifield,* 115 F.3d at 1565.

Toussaint's reliance on the argument that she was never actually a pool nurse is unavailing here. Showing that the Defendants' reason for the adverse action against Toussaint was factually inaccurate is irrelevant to the question of liability for discrimination. *Elrod,* 939 F.2d at 1470 (citation omitted). The "inquiry is limited to whether the employer gave an honest explanation of its behavior." *Id.* Even if the Defendants' belief is mistaken, it is not because of race. *Id.* Because "[n]ondiscriminatory differences just as readily explain the difference in treatment," a pretext has not been established and the Defendants prevail. *Nix,* 738 F.2d at 1186.

### Conclusion

In sum, Toussaint has established a prima facie case permitting an inference that the Defendants discriminated against her when the erroneous information regarding pool employment was inputted into the computer about her, but not about Gonzalez. However, the Defendants have presented a legitimate nondiscriminatory reason that it was mere computer error, and Toussaint admits that she has no evidence of discrimination. Because Toussaint has failed to establish that the Defendants reason for the error is a pretext for discrimination, she has not met her burden to show that she was actually discriminated against.[3] Therefore, upon review, there is no material issue for trial and it is hereby

**3.** While the Court finds as a matter of law there is no liability for racial discrimination, the Court questions why the Defendant sought to expend time and limited resources to defend this claim rather then simply acknowl-

ORDERED that Defendants' Motion for Summary Judgment is GRANTED.

edge its computer error, for which plaintiff has no responsibility, and place plaintiff in the situation that she would have been in had it not erred.