[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 18, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15149
Non-Argument Calendar

_____

D. C. Docket No. 04-00213-CV-CB-C

RICHARD S. ROPER,

Plaintiff-Appellant,

versus

CITY OF FOLEY,
FOLEY POLICE DEPARTMENT,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(April 18, 2006)

Before DUBINA, HULL and FAY, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Richard Roper, Sr., appeals through counsel the district court's grant of summary judgment, pursuant to Fed.R.Civ.P. 56(c), to his employer, the City of Foley, on his claim of discriminatory failure to promote based on race, filed pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a).[1] Roper argues on appeal that the district court erred in granting the City of Foley summary judgment because the City of Foley's articulated non-discriminatory reasons for not promoting Roper were pretextual. For the reasons set forth more fully below, we affirm.

Roper, an African-American employee of the City of Foley's Police Department, who was hired in 1990 as a police officer, filed an amended civil complaint, asserting, among other things, that the City of Foley engaged in unlawful employment discrimination based on race in violation of Title VII. Roper asserted in support of this claim that, (1) on August 25, 2002, after serving for several years as a sergeant in the Police Department's Patrol Division, he applied for the vacant position of lieutenant of that division; (2) on September 25, 2002, this lieutenant position was filled by Richard Springsteen, a white officer

---

[1] In granting the City of Foley summary judgment, the district court concluded that Roper had abandoned a retaliation claim by not responding to the City of Foley's arguments as to this claim. Because Roper has not challenged this determination on appeal, we conclude that he has abandoned any challenges to it. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) (explaining that issues not argued in initial brief are deemed abandoned).

2

who had no previous experience in the Patrol Division; (3) Roper also applied for the lieutenant vacancy in the Criminal Investigations Division, which was created by Springsteen's lateral transfer; (4) this lieutenant position in the Criminal Investigations Division was awarded to a white male employee with less experience and training than Roper; and (5) although prior lieutenant vacancies had been filled on the basis of seniority, the City of Foley did not follow this procedure in filling the two positions at issue in the instant case.

After answering this amended complaint, the City of Foley filed a motion for summary judgment, arguing that no genuine issue of material fact existed on Roper's claim of discriminatory failure to promote because, despite Roper's challenging the wisdom of the City of Foley's transfer of Springsteen to the lieutenant position in the Patrol Division, this transfer was based on the decision of James Miller, Chief of the Police Department, that Springsteen, who was familiar with that level of supervisory control, would be a better choice for the position than the promotion of a lower-ranking officer already within the Patrol Division. The City of Foley also contended that Roper had failed to show that its reasons for promoting David White, a white male, to Lieutenant of the Criminal Investigations Division, that is, based on White's experience, exemplary work history, lack of significant disciplinary history, and answers during his interview, were pretextual.

3

In support of its motion for summary judgment, the City of Foley submitted Roper's deposition, which included that, after being hired by the City of Foley in 1990, he was promoted to corporal in June of 1994, and to sergeant in June of 1996. Roper also agreed that, during his employment with the City of Foley, he had the following disciplinary actions taken against him: (1) a five-day suspension in 1991, for being in a physical altercation and for failing to report it; (2) a written warning in May of 1993, by Police Chief Miller, for losing his temper in a store; (3) a verbal warning in August 1993, from Captain Resmondo, concerning Roper's handling of a dispute between a merchant and a customer; (4) a finding in January of 1995, that he filed an unjustified internal-affairs complaint against three officers; (5) a written warning in 1999, for mis-use of the criminal-justice-computer system; (6) a one-day suspension in January 2001, for insubordination; and (7) a notation in his personnel file that, in June of 2001, he refused to sign his performance review, which assessed his performance as "average."

Additionally, Roper testified that, in August of 2002, when he applied for a vacant lieutenant's position in the Criminal Investigations Division, he initially believed that he was applying for a lieutenant position in the Patrol Division, and that he was entitled to this position due to his seniority. Roper, however, conceded that the City of Foley did not promote the most senior employee if that person had

4

a disciplinary history. Roper also stated that he believed that White should not have received the promotion to Lieutenant of the Criminal Investigations Division because White had not had enough years' experience in the Police Department.

Police Chief Miller attested that, because Springsteen had been a lieutenant with the City of Foley's Police Department, and because the Lieutenant of the Patrol Division, who oversees a large number of employees, must have an extensive amount of management and logistical skills, Springsteen was the best person to fill that position. The position Roper applied for in July of 2002, thus, was to be Lieutenant of the Criminal Investigations Division. In filling this position, a review board, consisting of Police Chief Miller, Captain Carl Resmondo, and Lieutenant Tommy Resmondo, reviewed personnel files and orally interviewed applicants from July through September 2002. This review board made a final recommendation to promote White, which Mayor Timothy Russell accepted.[2] This recommendation was based on White's interview, exceptional record, lack of significant disciplinary history, and recommendations, including a letter of commendation from a senator, thanking White for his efforts in personally directing "a drug undercover buying investigation in the Foley area that resulted in

---

[2] The City of Foley attached an affidavit from Mayor Russell, in which he attested that, in September of 2002, he decided to promote White to lieutenant based on the recommendation of the Police Department review board, and that race was not a factor in his decision.

the arrest of over thirty drug dealers."  Roper, on the other hand, performed poorly during his interview, failed to distinguish himself as a sergeant, and had a significant disciplinary history.[3]

In a corrected response, Roper argued that summary judgment was not warranted as to his claim of discriminatory failure to promote because the evidence established that (1) the position he was denied, that is, Lieutenant of the Patrol Division, was awarded to a white employee who had not sought the position and had little experience in the Patrol Division; (2) prior to, and after, the City of Foley filled this vacancy, it awarded vacancies based on seniority; and (3) the City of Foley changed its "long established method for filling such vacancies so as to avoid awarding the position to [Roper]."  Roper also responded that, to the extent the City of Foley had explained that he was denied the promotion because of his extensive disciplinary history, this reason was pretextual because the past disciplinary matters on which the City of Foley was relying (1) occurred over a 12-year period; (2) had not prevented him from being promoted to ranks of corporal in 1994, and sergeant in 1996; (3) were the result of Roper being disciplined more harshly than white employees, and (4) included discipline in 1999, for conduct

---

[3] In addition to Police Chief Miller's affidavit, the City of Foley submitted affidavits of Carl and Tommy Resmondo, which contained similar facts.

Roper did not commit.[4]  Additionally, Roper contended that pretext was shown by the fact that the City of Foley had not followed its customary procedure of promoting its most senior employee.

In support of these arguments, Roper attached to his original response his own declaration, which included that, during his early years as an employee with the Police Department, when he was the only black officer, he was subjected to different treatment than white officers, including being disciplined differently and having higher-ranking officers, including his training officer, Corporal Charles McKinley, subject him to racist statements or jokes, including the use of the "n" word and the statement that "I can't teach a monkey nothing."  Roper attested that several of his disciplinary actions were related to his attempts to address racial issues within the department, including racial graffiti on the walls of the firing range and racially offense material on the department's bulletin board.  Roper also contended that, although he was disciplined in 2000, for allegedly cursing at McKinley, Roper did not commit this act and the matter was not investigated.

---

[4]  Roper submitted a declaration by Mary Nunnari, a former employee of the City of Foley's Police Department who last served as Chief Dispatcher, which included that (1) she was employed by the City of Foley during the time period when Roper was accused of improperly using the NCIC computer system, and (2) an investigation revealed that another officer named "Fleming" actually committed this offense.

Roper also submitted the declaration of Sergeant Shawn Miller, who attested that, (1) in July of 2002, when McKinley retired, the only two sergeants who had been employed by the Police Department longer than himself were Mark Alexander and Richard Roper; (2) Miller applied for the vacant lieutenant position in the Patrol Division; (3) for the first time, the City of Foley filled this vacancy by using a review panel to conduct interviews and make a recommendation; (4) the City of Foley subsequently had not used this procedure; and (5) the "customary and established practice for promotions" involved promoting the most senior officer. Aubrey Bateman, an employee who resigned from the Police Department in 1996 or 1997, attested that (1) he observed officers make racial statements or jokes when referring to Roper, including McKinley stating "I can't teach a monkey nothing"; (2) McKinley also used the "n" word when referring to Roper, along with other employees; (3) Bateman thought this harassment was due to the fact that some white officers wanted Roper to resign; and (4) the Police Department had a practice of promoting the most senior officer to the available positions. Additionally, Roper attached a letter, dated July of 2002, in which he asked to be considered for the vacant lieutenant position.

The City of Foley replied that, to the extent Roper had cited to McKinley's alleged harassment, Roper had failed to raise any related claims in his complaint,

and McKinley had retired from the Police Department before the promotional decisions at issue in this case were made. The City of Foley also argued that, although Roper was contending that he had the most seniority, Mark Alexander actually had more seniority when White was promoted to the lieutenant position. The City of Foley contended that contrary to Roper's arguments relating to whether it previously, or since, had used a review panel in filing vacant positions, it also had used a review board for the only other promotion that had occurred since 2002. The City of Foley further argued that, in only challenging the wisdom of the reason for transferring Springsteen to the Patrol Division, Roper did not establish pretext. The City of Foley replied that, to the extent Roper was challenging White's record, White was cleared of a charge that he lost his service weapon. Finally, it argued that, assuming that Roper should not have been disciplined for some alleged bad acts, he had not contested his other misconduct.[5]

---

[5] The City of Foley submitted in support of its reply brief the following evidence: (1) Roper's personnel file, which included that he was hired on November 5, 1990, and that he did not appeal his January 2001 suspension for insubordination; (2) testimony that Alexander, who had been hired on October 22, 1990, thus, had more seniority than Roper; (3) an attestation by Karen Till that she was not aware of whether a panel was used for any subsequent promotions; (4) an attestation by Shawn Miller that he served on a promotion-review-board panel in April 2003, which resulted in the promotion of Kimberly Wasdin to the rank of corporal; (5) an attestation by Amelia Smith, the office coordinator for the Police Department, that a review panel had been used for Wasdin's promotion—the only promotion that had occurred since September 2002; and (6) an attestation by White that he was cleared of a charge that he lost his service weapon.

The district court granted the City of Foley summary judgment. The court initially explained that the case was "complicated slightly" by the fact that Roper and other applicants had thought that they were applying for the position of Lieutenant of the Patrol Division, when they, in fact, were applying for the position of Lieutenant of the Criminal Investigations Division. The court, however, determined that the City of Foley had proffered legitimate non-discriminatory reasons for its decisions regarding both of these positions, that is, that (1) a seasoned lieutenant, such as Springsteen, should be transferred to replace McKinley because the position in the Patrol Division required managing a large number of employees and an extensive understanding of logistics; and (2) White was a better candidate for the position in the Criminal Investigations Division, as shown by the facts that (i) White performed better during his interview, (ii) Roper had an extensive disciplinary record, and (iii) White had received recognition for his job performance from sources outside the department.

The court also determined that Roper had failed to show that these reasons were pretextual because, even assuming as true that the job announcement for the lieutenant position in the Criminal Investigations Division was unclear, and that cases generally moved from the Patrol Division to the Criminal Investigation Division, these facts did not belie the fact that the decision-maker believed that the

10

Lieutenant of the Patrol Division needed to be a seasoned lieutenant. The court explained that, to the extent Roper was attempting to discredit the City of Foley's reasons for promoting White over Roper by arguing that many of his disciplinary matters either were inconsequential because they did not prevent him from receiving past promotions or were unjustified, his remaining disciplinary record was not better than White's record. Finally, the court determined that Roper did not show pretext because (1) a subjective decision, such as the interview process at issue here, can be a legally sufficient reason, and (2) despite that Alexander had more seniority in the department than Roper, Alexander also did not receive the promotion to lieutenant.

As discussed above, Roper is arguing on appeal that the district court erred in concluding that no genuine issue of material fact existed as to whether he established that the City of Foley's proffered reasons for not promoting him were pretextual. Roper contends that evidence of pretext included the City of Foley's decision to transfer Springsteen to the position of Lieutenant of the Patrol Division when Springsteen never applied for the position. Roper asserts that, to the extent the City of Foley promoted White to the position of Lieutenant of the Criminal Investigations Division, instead of Roper, based on his superior performance during the interview, this reason was not credible because the department

11

previously had not used an interview process, the department did not use this process after 2002, and this process was subjective and arbitrary. Roper argues that the City of Foley's reliance on his extensive disciplinary record was pretextual because it relied on (1) instances that occurred well before Roper received his prior promotions, and (2) a charge for which he was cleared. Additionally, Roper contends that White (1) unfairly was not disciplined, despite his admission that he lost his duty weapon; and (2) only received commendations from outside sources due to his "political connections."[6]

We review de novo the grant of a motion for summary judgment. Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1230 (11th Cir. 2006). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To survive a motion for summary judgment, the nonmoving party must demonstrate that there is " a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

---

[6] To the extent Roper identified in the district court alleged harassing conduct, including McKinley's use of the "n" word and statement that "I can't teach a monkey nothing," he has abandoned any arguments relating to this evidence by failing to raise them in his appellate brief. See Access Now, 385 F.3d at 1330.

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where direct evidence of discrimination is unavailable—as was the case here—a plaintiff, nevertheless, may present circumstantial evidence of discrimination sufficient to create a jury question. Silvera v. Orange County School Bd., 244 F.3d 1253, 1258 (11th Cir. 2001). For claims based on circumstantial evidence, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Id. If the plaintiff is successful, the defendant must "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." Id. The plaintiff then may attempt to demonstrate that the proffered reason was, in fact, merely pretext for the defendant's acts. Id.[7] "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id.

To the extent the City of Foley is arguing that summary judgment was warranted because Roper failed to establish a prima facie case of failure to promote, the district court, in deciding that the City of Foley's reasons for not

[7] The Supreme Court set out this three-part burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-55, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

13

promoting Roper were not pretextual, at least implicitly decided or assumed that Roper had met this initial burden. However, "[w]hen reviewing a grant of summary judgment, the court of appeals may affirm if there exists any adequate ground for doing so, regardless of whether it is the one on which the district court relied." See Johnson v. Bd. of Regents of Univ. of Ga., 263 F.3d 1234, 1251 n.17 (11th Cir. 2001).

The City of Roper specifically is arguing that, because Roper contended as part of his pretext argument that the Police Department had a policy of promoting the most senior employee, and because Alexander, instead of Roper, was the most senior employee, Roper was not qualified for the promotion. A plaintiff establishes a prima facie case of discriminatory failure to promote by showing that (1) he is a member of a protected class; (2) he was qualified and applied for the promotion, (3) he was rejected despite his qualifications, and (4) other equally or less qualified employees who were not members of the protected class were promoted. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004). Under the second prong—the only one the City of Foley is challenging here—a Title VII plaintiff need only show that he satisfied the employer's objective qualifications. See Vessels v. Atlanta Independent School System, 408 F.3d 763, 769 (11th Cir. 2005). We also do not require a plaintiff to establish that he is more

14

qualified than the successful promotee, much less impose this requirement at the prima facie stage. See Walker v. Mortham, 158 F.3d 1177, 1192 (11th Cir. 1998). The City of Foley failed to produce evidence rebutting Roper's contention that, applying the employer's objective qualifications, he was at least minimally qualified for the lieutenant position. Roper, thus, appear to have met his burden of showing a prima facie case of failure to promote. See Vessels, 408 F.3d at 769.

Nevertheless, assuming that Roper established a prima facie case of discriminatory failure to promote, as the district court implicitly has done, Roper failed to show that the City of Foley's proffered non-discriminatory reasons for not promoting him were pretextual. In determining pretext, we evaluate whether the plaintiff demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (quotation omitted). "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant's articulated reasons is pretextual, the [defendant] is entitled to summary judgment." Chapman v. AI Transport, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (en banc) (discussing pretext in context of age and disability discrimination).

15

Roper argued that he established that the City of Foley's reasons, for transferring Springsteen to the position of Lieutenant of the Patrol Division and for promoting White to the position of Lieutenant of the Criminal Investigations Division, were pretextual because it (1) did not follow its usual procedure of promoting the most senior officer to fill the vacant position created by McKinley's retirement, and (2) resumed following its usual procedure following these promotions. Evidence that establishes rules were bent or broken to give a candidate an advantage in seeking a promotion may be probative of pretext. See Vessels, 408 F.3d at 771-72 (discussing the fact that the employer violated its own personnel procedures in the selection of another employee). Roper, however, did not rebut Miller's attestation that he decided that Springsteen was best suited to fill the position in the Patrol Division because this position required extensive management and logistical skills. Following Roper's argument that the most senior officer should have been promoted to the then-vacant position in the Criminal Investigations Division, the record showed that Alexander, a white officer, had the most seniority and was not selected. The City of Foley also showed that it used a review board in April 2003, when it promoted Wasdin—the only promotion that occurred since September 2002. Thus, the City of Foley's use of a review board in promoting White did not establish pretext.

16

To the extent Roper contended that the City of Foley's reason that White was more qualified for the position of Lieutenant of the Criminal Investigations Division was pretextual, a plaintiff also cannot prove pretext merely by asserting that he was better qualified. Wilson, 376 F.3d at 1090. We "must not judge which employee was more qualified, but determine whether any disparity is so great that a reasonable fact-finder could infer that [the employer] did not believe" that the comparator was better qualified. Id. (quotations and marks omitted).[8] Moreover, "a plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason," as long as "the reason is one that might motivate a reasonable employer." Pennington v. City of Huntsville, 261 F.3d 1262, 1267 (11th Cir. 2001); see also Rowell v. BellSouth Corp., 433 F.3d 794, 798-99 (11th Cir. 2005) (explaining that "[i]t is by now axiomatic that we cannot second-guess the business decisions of an employer").

Applying this analysis to the instant facts, although "qualifications evidence may suffice, at least in some circumstances, to show pretext," see Ash, ___ U.S. at

---

[8] We note that, to the extent we have explained in the past that the plaintiff must adduce evidence that the disparity in qualifications was "so apparent as virtually to jump off the page and slap you in the face," see Wilson, 376 F.3d at 1090, the Supreme Court recently has clarified, without offering an alternative standard of review, that an employer's stated reasons for an allegedly discriminatory hiring decision need not "jump off the page and slap you in the face" to be considered pretextual, see Ash v. Tyson Foods, Inc., ___ U.S. ___, 126 S.Ct. 1195, 1197-98, ___ L.Ed.2d ___ (Feb. 21, 2006). The Supreme Court also discussed that "qualifications evidence may suffice, at least in some circumstances, to show pretext." See Ash, __ U.S. at ___, 126 S.Ct. at 1197.

17

___, 126 S.Ct. at 1197, evidence reflecting that Roper was substantially less qualified than White for the position of Lieutenant of the Criminal Investigations Division included Police Chief Miller's testimony relating to White's interview, exceptional record, lack of significant disciplinary history, and recommendations, including a letter of commendation from a senator, thanking White for his efforts in personally directing "a drug undercover buying investigation in the Foley area that resulted in the arrest of over thirty drug dealers." On the other hand, Police Chief Miller attested that Roper had a poor interview, failed to distinguish himself as a sergeant, and had a significant disciplinary history. Moreover, to the extent Roper was contending that at least some of his disciplinary record was the result of false charges, he only challenged whether the alleged acts occurred, not whether the review board believed that they occurred. See Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1471 (11th Cir. 1991) (explaining that employee failed to show pretext where he presented evidence suggesting that allegations were untrue, but failed to show that his employer's belief in those allegations was not credible); see also Cofield v. Goldkist, Inc., 267 F.3d 1264, 1268-69 (11th Cir. 2001) (affirming summary judgment in favor or employer who promoted candidate it believed was more qualified).

Roper also failed to establish pretext based on the City of Foley's use of subjective criteria in selecting White to fill the position of Lieutenant of the Criminal Investigations Division. Because an employer may use legitimate, non-discriminatory subjective factors in its decision-making, "[t]his Court has refused to adopt a lower standard when employers use subjective criteria." See Wilson, 376 F.3d at 1088. A subjective reason, such as the review board's opinions of the candidates' performances during their interviews, can be a "legally sufficient, legitimate, nondiscriminatory reason" if the defendant sets out a "clear and reasonably specific factual basis upon which it based its subjective opinion." See Chapman, 229 F.3d at 1030. Police Chief Miller gave specific reasons for selecting White, and the City of Foley submitted supporting evidence, including that White articulated better reasons for why he was their best candidate.

Accordingly, assuming that Roper established a prima facie case of Title VII failure to promote, we conclude that he failed to show that genuine issues of material fact existed as to whether the City of Foley's proffered non-discriminatory reasons for not promoting him were pretextual. We, therefore, affirm the district court's grant of summary judgment.

**AFFIRMED.**