[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 20, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-13618
Non-Argument Calendar
_____

D. C. Docket No. 07-00670-CV-2-IPJ

WILLIE DRAKE-SIMS,
individually and on behalf
of others similarly situated,

                                        Plaintiff-Appellant-Cross-Appellee,

versus

BURLINGTON COAT FACTORY WAREHOUSE OF
ALABAMA, INC., et al.,

                                        Defendants,

BURLINGTON COAT FACTORY OF ALABAMA, LLC,

                                        Defendant-Appellee-Cross-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

(May 20, 2009)

Before BIRCH, DUBINA and PRYOR, Circuit Judges.

PER CURIAM:

Willie Drake-Sims ("Drake-Sims"), an African-American, appeals the district court's grant of summary judgment in favor of her former employer, Burlington Coat Factory of Alabama, L.L.C. ("BCF"), on her claims of discrimination and retaliation brought under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-2(a), 3(a). BCF cross-appeals that portion of the district court's order requiring each party to bear its own costs. Upon careful review of the record and consideration of the parties' briefs, we AFFIRM the district court's entry of summary judgment for BCF on Drake-Sims' discrimination and retaliation claims. We VACATE that aspect of the district court's order requiring each party to bear its own costs and REMAND for further explanation as to why the court denied an award of costs, or, alternatively, for an award of costs in favor of BCF.

## I. BACKGROUND

In 2007, Drake-Sims filed a Third Amended Complaint against BCF alleging that BCF: (1) discriminated against her on the basis of her race when it failed to promote her to the position of store manager, paid her a salary that was lower than the salary it paid to similarly situated white employees, and terminated her employment; and (2) BCF retaliated against her for complaining about

2

discriminatory practices when it gave her poor job performance evaluations, failed to promote her, and terminated her employment. Drake-Sims requested various forms of declaratory and injunctive relief as well as monetary damages.

BCF answered, denying the allegations in the complaint and asserting several affirmative defenses. Following discovery, BCF moved for summary judgment. In support of its motion, BCF submitted, inter alia, depositions from Drake-Sims; Todd Brawner, BCF's former regional manager; Richard Lange, BCF's former district manager; and two BCF assistant managers, Ann Marie Kearby and Laurie Ann Bardin. BCF also submitted affidavits from Kearby, Bardin, and Brawner.

In her deposition, Drake-Sims testified that she began working for BCF in 1989 as a sales associate at the company's Hoover, Alabama store. In 1998, she was promoted to operations manager of BCF's Crestwood Boulevard store in Eastwood, Alabama ("Crestwood store"). She testified that as operations manager of the Crestwood Store, she was paid less than Kearby and Bardin, the two white assistant managers of merchandising at the Hoover store.[1] According to Drake-

---

[1] The record reflects that in 2004, Drake-Sims was paid $16.90 per hour, resulting in an annual salary of approximately $35,000. In 2005 and 2006, she earned $17.45 per hour, or $36,000 per year. Bardin was hired at a rate of $22.73 per hour, or $47,000 per year. Her salary remained the same until 2007, when she was promoted to store manager. Kearby was hired as an assistant manager at the Hoover store, but was recruited by another company in 2003. BCF rehired her as an assistant manger in 2005 at $23.07 per hour, or $48,000 per year. Her salary remained the same until December 2006, when she was promoted to store manager at a new

3

Sims, because she and Kearby and Bardin all held assistant positions, they shared equal responsibilities and should have received the same pay. Id. In March 2004, Drake-Sims filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was being paid "substantially less than a similarly situated White employee" because of her race.[2]

When Beverly Knight, the manager of the Crestwood store, left the company in August 2004, Drake-Sims served as acting store manager while BCF searched for Knight's replacement. Although Drakes-Sims submitted an application for the store manager position, Lange, who was tasked with filling the vacant Crestwood store manager position soon after being hired by BCF in 2004 as a district manager, selected Holly McGee, a white woman who previously had worked as an assistant store manager at Dillard's, to fill the vacancy. Lange testified that he conducted interviews with five external candidates but did not interview any of the in-house candidates, although he seriously considered Drake-Sims for the position. While Drake-Sims was knowledgeable about BCF's operations, policies, and procedures, and had worked hard during her time as acting store manager, Lange noted that she often overlooked details, at times failed to follow company policies

BCF location.

[2] The EEOC dismissed the charge and notified Drake-Sims of her right to sue on 30 September 2004.

or respond to his direction and coaching, and had not acted with enough urgency in attempting to staff vacant positions in the store. With respect to her managerial skills, Lange indicated that while some employees at the Crestwood store were very loyal to Drake-Sims, others felt that her leadership was inconsistent and that she did not act in an even-handed fashion. Lange ultimately selected McGee based on her experience managing a high-volume store during a period in which her company was going through significant changes and because she had good communication and problem-solving skills, was "persistent" and "adaptable," and "had a lot of enthusiasm and a very positive attitude to the business." Drake-Sims testified that she was nevertheless more qualified than McGee because she had been with BCF for a long period of time and was familiar with its policies and business objectives. She stated that McGee did a fair job but appeared to be overwhelmed during her time as store manager. On one occasion, McGee admitted to Drake-Sims that she had never run a store as large as the Crestwood store.

On 8 March 2005, Drake-Sims received a negative performance evaluation from Lange for the December 2003 to December 2004 evaluation period. With respect to Drake-Sims' potential for advancement, Lange's evaluation concluded that she "will probably remain at a similar level of responsibility." Drake-Sims subsequently wrote a letter, dated 20 May 2005, to Judith Mascio, the director of

5

BCF's human resources department, and Wade Seale, the regional manager at the time, complaining that she had received "unjust and discriminatory treatment" during the hiring process for the Crestwood store manager position. She claimed that the decision not to interview or promote her was "based on past issues with Wade Seale" and listed several of her accomplishments during her tenure as acting store manager.

In her 8 July 2005 response, Mascio identified a number of problems with Drake-Sims' job performance, including, inter alia, Drake-Sims' "less than satisfactory attendance" and failure to follow the company's human resources policies, to staff open positions, or to keep payroll within budget. Mascio also noted that Drake-Sims' 2003-2004 year-end review, which gave her an overall score of "3 – meets expectations" but rated her "needs improvement" in four out of eight categories, demonstrated that she was not "ready for the next level of responsibility," and advised Drake-Sims that the decision not to hire her for the store manager position was "based on [her] performance and reliability" and had no "discriminatory basis."

Some time in July or August, Brawner, Lange, and Seale held a meeting with Drake-Sims to discuss the concerns she had raised in her letter to Mascio. While Lange had read the letter and consulted with Mascio regarding its contents,

6

he did not interpret it as suggesting that Drake-Sims had been discriminated against. According to both Brawner and Lange, Drake-Sims made no mention of any alleged race discrimination during the meeting. Drake-Sims testified, however, that she had had ongoing discussions with Quederra Shabazz, a BCF loss prevention auditor, about what she believed to be BCF's racially discriminatory practices and that Shabazz indicated that she was aware of discrimination occurring at other BCF stores.

In November 2005, Drake-Sims applied for the position of store manager at the Hoover store after Garry Yates, who had been the store manager, left BCF. Elaine Cox, a white woman who had been employed by Stein Mart as a store manager, was selected for the position. Brawner testified that Drake-Sims was not selected to fill the vacancy because Cox had experience as a store manager, BCF was already in the process of hiring Cox when Drake-Sims indicated her interest in being considered for the position, and Drake-Sims' performance had not improved to any significant degree since she met with Lange, Seale, and Brawner to discuss why she had not been selected for the Crestwood store manager position.

According to Lange, while he believed it was "the best thing for everybody involved" to promote from within, Drake-Sims was not ready for the responsibility of managing a store. Lange explained that Drake-Sims had not been considered for

7

any store manager positions other than the one at the Crestwood store because her overall review score of four on her 2005 annual review, which indicated a number of performance problems, precluded eligibility for promotion. Lange further indicated that while he was aware that Drake-Sims had filed an EEOC complaint based on disparate pay, he did not know that the complaint alleged discrimination on the basis of race and was never advised that any employee had complained of race discrimination.

That same month, McGee informed Drake-Sims of reports that Jheri Hunter and Mary Glenn, Crestwood store employees, were stealing merchandise from the store. On 24 December 2005, Harrison notified Drake-Sims about a possible employee theft in progress at the front of the store. Drake-Sims immediately went to the front but did not observe any customers or merchandise. She examined the cashier detail tape and noticed a transaction that had been voided using McGee's key card.[3] Drake-Sims confronted McGee about her violation of company policy, but agreed, upon McGee's request, not to report McGee to the district manager because it did not appear that any items had actually been taken from the store.

---

[3] Drake-Sims explained that a key card was a specially programmed time card that allowed store managers and assistant managers to authorize certain transactions, such as voids and returns, and also allowed them to open doors to receive shipments. Id. at 140. Although company policy prohibited managers from giving their key cards to other employees, Drake-Sims stated that it was a common practice for managers to violate this policy and that she herself would do so once or twice a month when she was the only manager present in the store. Id. at 131-33.

Several months later, however, Drake-Sims mentioned this incident to Shabazz.

At some point in early 2006, Sheena Harrison, a department manager at the Crestwood store, also advised Drake-Sims that she believed Hunter and Glenn were having a third employee, LaParisha Denton, put merchandise in their cars in the morning before other employees arrived at work. Drake-Sims notified David Pace, a district manager, about the possible theft problem, but did not report to him McGee's violation of the company's key card policy.

On 11 January 2006, McGee gave Drake-Sims a negative performance evaluation for the December 2004 to December 2005 evaluation period. Drake-Sims was upset after receiving McGee's evaluation, which she believed did not "reflect [her] ability at all." McGee told Drake-Sims that Lange had directed her to write the negative review, and indicated that she had strongly disagreed with his assessment. On 14 February 2006, the same day she received the evaluation, Drake-Sims filed a second EEOC charge based on unequal pay and BCF's failure to hire her for the Hoover store manager position. She alleged additionally that management officials had retaliated against her for complaining about discriminatory practices. McGee left the company in 2006, and Drake-Sims again served as acting store manager of the Crestwood store.

In July 2006, John Petrino, BCF's head of loss prevention, contacted Drake-

Sims about the unusually high amount of "shrink" (inventory loss) at the Crestwood store. Drake-Sims told Petrino that these losses were due to employee theft and that McGee and Pace had been aware of the problem. She later related this same information to Brawner. After Drake-Sims advised Petrino and Brawner of the employee theft problem at the Crestwood location, BCF sent a loss prevention team to the store to investigate. About a week later, Brawner himself came to the Crestwood store and interviewed a number of employees. Some of these employees later told Drake-Sims that Brawner had asked questions about her personal life.

On 31 July 2006, while the loss prevention investigation was still ongoing, Drake-Sims was added as a plaintiff in an employment discrimination lawsuit filed against BCF by Antonio Samuels, one of Drake-Sims' former coworkers. The district court later severed Drake-Sims' and Samuels' cases. On 7 August 2006, one week after she joined Samuels' lawsuit, Drake-Sims was notified that she was being terminated for giving her keycard to other employees and for failing to report McGee for giving her keycard to an employee who used it in an act of theft. Brawner testified that as regional manager for BCF's southeast region, he made the decision to terminate Drake-Sims' employment after reviewing the results of the loss-prevention investigation at the Crestwood store.

In addition to Drake-Sims, several other employees of the Crestwood store were terminated as a result of the investigation: Alethea Williams was terminated for "free bagging"[4] merchandise; Justin Wright, a white employee, for failing to report a theft of which he had firsthand knowledge; Denton for stealing merchandise; and Glenn for falsifying information on a company document. Hunter and Harrison, both African-American, were the only two employees found to have violated company policies who were not terminated following the investigation. Hunter was issued a final written warning for giving her key card out to other employees, and Harrison received a warning for failing to report that McGee had given her key card to another employee. Brawner explained that Harrison was not terminated because she reported the incident to Drake-Sims, who was her immediate supervisor. Drake-Sims, on the other hand was required, as a member of senior management, to report any potential theft to the district office and, if necessary, to the regional office and to BCF's corporate offices.[5] Brawner admitted that he received a copy of Drake-Sims' February 2006 EEOC charge but

_____

[4] Brawner explained that "free bagging" is when an employee places items in a customer's shopping bag without ringing them up on the cash register so that the customer may remove the items from the store without paying for them.

[5] According to BCF's Loss Prevention Policy, employees are required to report incidents to their immediate supervisors. The policy further provides that where this is impracticable or the employee's immediate supervisor is involved, the employee should contact Corporate Loss Prevention.

11

stated that he was unaware that Drake-Sims had filed a discrimination lawsuit against BCF at the time he made the decision to terminate her.

With respect to Drake-Sims' disparate pay allegations, Brawner testified that BCF considered a number of factors when setting the salaries of assistant managers, including current economic and employment conditions; the applicant's relevant experience; whether the applicant was employed or unemployed; and sales volume, since a store with higher earnings could support a larger payroll. While the Hoover store had gross annual sales of eight to nine million dollars, the Crestwood store had between six and seven million.

Brawner further explained that BCF typically offers higher salaries to individuals who are employed with other companies in order to persuade them to leave their current employers. The fact that Drake-Sims was a long-term BCF employee also "had an effect on [her] pay relative to more newly hired employees" because employees of BCF were awarded annual salaries based in part on personal performance, and in part on store performance. Employees therefore were unlikely to receive substantial raises unless both their personal performance and their store's performance were consistently excellent. Lange agreed that while managers at BCF's Hoover store earned more than managers at the Crestwood store, he did not consider this problematic because BCF negotiated salaries based

12

on an individual's prior experience and the value they brought to the company.

According to their sworn statements, both Kearby and Bardin had worked as assistant managers at other retail stores prior to being hired by BCF and had negotiated higher salaries, $38,000 from $31,000 and $44,500 from $41,000, respectively, in exchange for agreeing to leave their previous employers. Neither Kearby nor Bardin would have accepted a position at BCF had BCF not offered them increased salaries. BCF subsequently increased Kearby's salary to $42,000 after she received a job offer from Staples, and although she left the company in 2003 to take a higher-paying position with DSW Shoes, she returned to BCF in 2005 after BCF promised her another salary increase. Bardin received a small raise in 2003, but did not receive any more salary increases until she was promoted to store manager in 2007.

The district court concluded that BCF was entitled to judgment as a matter of law on all of Drake-Sims' claims.[6] The court first found that Drake-Sims had failed to establish a prima facie case of race discrimination based on disparate pay because she had not identified any similarly situated employees outside of her

---

[6] Although the district court found that Drake-Sims was judicially estopped from bringing any claims for money damages because she had failed to disclose her EEOC charges in her Chapter 13 bankruptcy proceeding, Drake-Sims does not challenge this ruling in her opening brief and thus has abandoned this issue. See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989). The district court correctly determined that judicial estoppel did not, however, preclude her from pursuing her claims for equitable relief. Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1288-89 (11th Cir. 2002).

protected class who had been treated more favorably. Although Drake-Sims compared herself to Kearby and Bardin, both of whom were also assistant managers, the court noted that both Kearby and Bardin had negotiated higher salaries as a condition of leaving their previous employers to join BCF. Kearby had also leveraged competing offers from other companies to secure further salary increases. Because Drake-Sims had been promoted from within and had not obtained competing offers from other companies, she and Kearby and Bardin were not similarly situated.

The district court found that Drake-Sims likewise had failed to identify any similarly situated comparators with respect to her failure to promote claim because the selectees for the positions for which Drake-Sims had applied, McGee and Cox, both had prior experience as store managers with other companies. The court found further that BCF had a legitimate, non-discriminatory reason for not hiring Drake-Sims because evidence in the record suggested that there were serious problems at the Crestwood store during Drake-Sims' tenure as acting store manager.

The district court also found that Drake-Sims had not identified any similarly situated comparators with respect to her claim that she was terminated because of her race. Although Harrison also knew of the possible theft, she was a

14

member of the same protected class as Drake-Sims and was not a member of the store's senior management team. Two other employees, Justin Wright and Pete Rouyverol, were not appropriate comparators because: (1) Wright, who was white, had also been terminated and thus was not treated more favorably than Drake-Sims; (2) there was no evidence that Rouyverol, who had been employed as a greeter, had any knowledge of employee theft; and (3) neither was a member of senior management. Id.[7]

With respect to Drake-Sims' retaliation claim, the court found that there was insufficient temporal proximity between her protected activity and her termination to establish a causal connection because she was not terminated until six months after she filed her second complaint with the EEOC. The court further found that Drake-Sims could not show that her termination was in retaliation for filing the present lawsuit because Brawner was unaware of the lawsuit at the time he made the decision to terminate her.

The district court entered summary judgment on all of Drake-Sims' claims, dismissed the case with prejudice, and ordered each party to bear its own costs. Drake-Sims now appeals the district court's grant of summary judgment, and BCF cross-appeals the court's order to the extent it requires BCF to pay its own

---

[7] Drake-Sims does not challenge this finding in her brief and thus has abandoned this issue on appeal. See Greenbriar, 881 F.2d at 1573 n.6.

litigation costs.

## II. DISCUSSION

We review de novo a district court's grant of summary judgment, applying the same legal standards used by the district court. See Galvez v. Bruce, 552 F.3d 1238, 1241 (11th Cir. 2008). Summary judgment is appropriate only when the evidence, considered in the light most favorable to the nonmavant, presents no genuine issues of material fact and compels judgment as a matter of law. Fed. R. Civ. P. 56(c); Swisher Int'l., Inc. v. Schafer, 550 F.3d 1046, 1050 (11th Cir. 2008). "A mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Brooks v. County Comm'n of Jefferson County, Ala., 446 F.3d 1160, 1162 (11th Cir. 2006) (quotation marks and citation omitted).

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In an employment discrimination case where the plaintiff relies on circumstantial evidence, we apply the burden-shifting framework of McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). See

Crawford v. Carroll, 529 F.3d 961, 975-76 (11th Cir. 2008). Under this framework, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. See id. at 976. If the plaintiff satisfies the elements of a prima facie case, the burden then shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action. See id. If the defendant is able to do so, the burden shifts back to the plaintiff to show that this reason is a mere pretext for unlawful discrimination. Id. "The inquiry into pretext requires the court to determine, in view of all the evidence, whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." Id. (quotation marks and citation omitted). The ultimate burden of persuasion with respect to whether "the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Springer v. Convergys Customer Mgmt. Group, Inc., 509 F.3d 1344, 1347 (11th Cir. 2007) (per curiam).

A. Disparate Pay

In order to establish a prima facie case of disparate pay, a plaintiff must show that "she occupies a position similar to that of a higher paid employee who is not a member of her protected class." Crawford, 529 F.3d at 974-75 (citing Meeks

17

v. Computer Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir.1994)). The employee whom the plaintiff identifies as a comparator "must be similarly situated *in all relevant respects*." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) (quotation marks and citation omitted) (emphasis added). We have held this to mean that "[t]he comparator must be nearly identical to the plaintiff." Id.

Drake-Sims has failed to establish a prima facie case of disparate pay because none of the three possible comparators whom she has identified – Bardin, Kearby, or Yates – is similarly situated to her. Bardin and Kearby both had been hired from other companies and had demanded higher salaries as a condition of leaving their previous employers, and Yates had been employed as a store manager whereas Drake-Sims worked as an assistant manager. The district court thus properly granted summary judgment with respect to Drake-Sims' disparate pay claim.

B. Failure to Promote

A plaintiff may establish a prima facie case of discrimination based on an employer's failure to promote her by showing that: (1) she is a member of a protected class; (2) she is qualified for and applied for the position; (3) she was rejected despite her qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted. See

18

Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 768 (11th Cir. 2005) (per curiam). Assuming the plaintiff satisfies these elements and the employer asserts a legitimate, non-discriminatory reason for failing to promote the plaintiff, the plaintiff must then prove that the employer's proffered reason is pretextual by showing that the disparities between her qualifications and those of the successful applicant are "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." Brooks, 446 F.3d at 1163 (quotation marks and citation omitted).

Even assuming Drake-Sims has established a prima facie case of discrimination, her claim nevertheless fails because BCF has offered a legitimate, non-discriminatory reason for its decision not to promote her to store manager of either the Crestwood or Hoover stores. While both of the individuals whom BCF hired to fill the vacant store manager positions, McGee and Cox, were experienced candidates who had previously served as store managers with other companies, Drake-Sims had only temporarily served as an acting store manager for BCF. Further, the record is clear that BCF officials had serious concerns about Drake-Sims' performance during her service in that capacity. Moreover, Drake-Sims has presented no evidence that BCF's proffered reasons were pretextual. Although she asserts that BCF should have given more weight to her years of experience with the

company, she has not shown that no reasonable person could have selected McGee or Cox instead of her. The district court thus did not err in granting summary judgment with respect to Drake-Sims' failure to promote claim.

C. Retaliation

In order to make out a prima facie case of retaliation, a plaintiff must show that: "(1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." Crawford, 529 F.3d at 970. To establish the requisite causal connection, "the plaintiff must prove that the protected activity and the adverse action are not completely unrelated." Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 978 n.52 (11th Cir. 2008) (quotation marks and citation omitted). The plaintiff may satisfy this burden by showing close temporal proximity between her protected activity and the adverse employment action. See Thomas v. Cooper Lighting, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam). In the absence of other evidence tending to show causation, temporal proximity must be "very close." Id. (quotation marks and citation omitted). Temporal proximity alone will not suffice to establish a causal connection "where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." Brungart v.

20

BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000); see Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1262 (11th Cir. 2001) ("Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent.").

### 1. Termination

Drake-Sims was terminated approximately six months after she filed her second EEOC charge of discrimination. We have held that a three- to four-month period between the protected activity and the adverse employment action is not enough to show "very close" temporal proximity. See Thomas, 506 F.3d at 1364. Because Drake-Sims has failed to present any other evidence tending to establish causation and there was a "substantial delay" between the protected activity and the adverse action, her retaliation claim fails as a matter of law. Id. Further, while Drake-Sims was terminated just one week following the filing of her discrimination lawsuit, she has failed to rebut Brawner's testimony that he was unaware of her lawsuit at the time he made the decision to terminate her. Although other BCF officials may have been aware of the lawsuit, their knowledge may not be imputed to Brawner. See Silvera, 244 F.3d at 1262.

### 2. Negative Performance Reviews

Drake-Sims likewise has failed to satisfy her burden of demonstrating a

causal connection between her protected activities and her negative performance reviews. She received a negative review from Lange in March 2005, a year after she had filed her first EEOC claim, and received a negative review by McGee in January 2006, approximately eight months after she complained to Mascio that she had been discriminated against in the selection process for the store manager position at the Crestwood store and nearly two years after she filed her first EEOC charge of discrimination. Neither of these reviews was sufficiently close in time to Drake-Sims' protected activity to prove a causal connection.

3. Failure to Promote

Finally, Drake-Sims has not established a causal connection between her protected activity and BCF's failure to promote her to the Hoover store manager position. This position became vacant in November 2005, six months after she sent her letter to Mascio, and had already been filled at the time she filed her 2006 EEOC charge. Our precedent makes clear that the temporal proximity between Drake-Sims' protected activity and BCF's decision not to promote her is insufficient to establish the requisite causation to support a prima facie case of retaliation. See Thomas, 506 F.3d at 1364.

D. Award of Costs

We review for an abuse of discretion a district court's decision to award or

22

not to award costs to the prevailing party. Mathews v. Crosby, 480 F.3d 1265, 1276 (11th Cir. 2007). Rule 54(d) of the Federal Rules of Civil Procedure provides that litigation costs, other than attorneys' fees, should be awarded to the prevailing party "[u]nless a federal statute, these rules, or a court order provides otherwise. Fed. R. Civ. P. 54(d). Rule 54(d) creates a "strong presumption" in favor of awarding costs to the prevailing party. Mathews, 480 F.3d at 1276. "To defeat the presumption and deny full costs, a district court must have and state a sound basis for doing so." Chapman v. AI Transp., 229 F.3d 1012, 1039 (11th Cir. 2000) (en banc). The district court failed to state its reasons for denying full costs to BCF as the prevailing party and thus abused its discretion in ordering each party to bear its own costs.

## III. CONCLUSION

Drake-Sims appeals the district court's grant of summary judgment in favor of BCF. We AFFIRM summary judgment for BCF because Drake-Sims failed to carry her burden of establishing either a prima facie case of discrimination or a prima facie case of retaliation under Title VII. Because the district court abused its discretion by failing to set forth its reasons for denying full costs to BCF, we VACATE that portion of the district court's order requiring each party to bear its own costs and REMAND for further proceedings consistent with this opinion.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**