[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13883
Non-Argument Calendar
_____

D.C. Docket No. 2:12-cv-00707-JHH

TANISHA C. FOSTER,

Plaintiff-Appellant,

versus

BIOLIFE PLASMA SERVICES, LP,
a partnership between BioLife Plasma Inc.
and Baxter Healthcare Corp.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(May 15, 2014)

Before MARCUS, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Tanisha Foster appeals the district court's grant of defendant BioLife Plasma

Services, LP's ("BioLife") motion for summary judgment as to her complaint

alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981. She argues that: (1) she presented sufficient evidence to permit a jury to disbelieve BioLife's proffered legitimate, nondiscriminatory reason for terminating her; and (2) the district court improperly weighed witness credibility. After careful review, we affirm.

The relevant, undisputed facts are these. Foster, an African-American, was employed as a lab technician at BioLife, which was in the business of collecting high-quality plasma and processing it into therapies to be used in the treatment of medical disorders. Under the company's standard operating procedures, shipments of plasma that it received were required to have a shipping date that was consecutive to the receiving date, or else an external nonconformance ("ENC") form had to be initiated to determine if the plasma was still usable. On July 13, Foster came across a partially reviewed lab folder, and noticed that the shipping and receiving dates on a shipping form in the folder were July 5 and July 7. She alerted Marvin King, a co-worker who had trained her, about the nonconsecutive dates, and they initiated an ENC form.

BioLife later discovered that the shipping date on the shipping form had been changed from July 2 to July 5 at some point on July 13. The company launched an investigation into the matter, and Foster was interviewed by management about her contact with the form, as well as that of two other African-

American employees, King and Carmela Montgomery.  The investigation was unable to pinpoint who had changed the date on the form, but it determined that Foster, King, and Montgomery were the individuals most likely to have falsified the form, and BioLife terminated all three, allegedly because it lost confidence in them.  None of the Caucasian employees who had come into contact with the form in question were disciplined.

We review a district court's order granting summary judgment de novo, "viewing all the evidence, and drawing all reasonable inferences, in favor of the non-moving party."  Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 767 (11th Cir. 2005).  Summary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1374 (11th Cir. 1996).  A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party.  Brooks v. Cnty. Comm'n of Jefferson Cnty., 446 F.3d 1160, 1162 (11th Cir. 2006).

A court should not generally grant summary judgment or a directed verdict based solely on the favorable testimony of an interested witness.  See Hibiscus Assocs. Ltd. v. Bd. of Trustees of the Policemen & Firemen Retirement Sys., 50 F.3d 908, 921 (11th Cir. 1995) (directed verdict).  However, if the testimony of an

3

interested witness is inherently plausible and corroborated by other evidence, then summary judgment may be appropriate. See id.

Title VII makes it unlawful for employers to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). Under 42 U.S.C. § 1981, "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens," which in an employment context means protection against discrimination based on race. 42 U.S.C. § 1981(a); see, e.g., Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1330-34 (11th Cir. 1998). Title VII and 42 U.S.C § 1981 have the same requirements of proof and use the same analytical framework, so it is appropriate to "explicitly address [a] Title VII claim with the understanding that the analysis applies to the § 1981 claim as well." Standard, 161 F.3d at 1330.

Claims based on circumstantial evidence are evaluated under the McDonnell Douglas[1] burden-shifting framework. Burke-Fowler v. Orange County, 447 F.3d 1319, 1323 (11th Cir. 2006). If a plaintiff establishes a prima facie case, and the employer shows a legitimate nondiscriminatory reason for its employment action, then the plaintiff must prove that the employer's reason is a pretext for unlawful discrimination. Id. at 1323. A plaintiff seeking to show pretext must "meet [the

---

[1] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

4

reason] head on and rebut it." Wilson v. B/E Aerospace, 376 F.3d 1079, 1088 (11th Cir. 2004).

We do not judge whether an employer's decisions are "prudent or fair," and the sole concern is whether unlawful discriminatory animus motivated an employment decision. Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999). Furthermore, a reason is not pretextual "unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993). A plaintiff cannot show pretext merely by showing that an employer's good faith belief that she engaged in misconduct is mistaken. EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1176-77 (11th Cir. 2000).

To the extent a plaintiff seeks to show disparate treatment of comparators, those individuals must still be similarly situated. See Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001) (concluding that plaintiff's comparator evidence did not support a showing of pretext because the comparator was not "similarly situated"). To establish that a defendant treated similarly situated employees more favorably, a plaintiff must show that her comparators are "similarly situated in all relevant aspects." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). We have held, at least in disciplinary contexts, that the quality and quantity of a comparator's conduct must be nearly identical to the plaintiff's in

5

order to prevent courts from second-guessing a reasonable decision by the employer. Maniccia v. Brown, 171 F.3d 1364, 1368-69 (11th Cir. 1999). While not always the case, differences in treatment by different supervisors or decisionmakers can seldom be the basis for a viable claim of discrimination. Silvera, 244 F.3d at 1261 n.5.

Here, we are unpersuaded by Foster's claim that the district court erred by relying on the testimony of an interested witness when granting summary judgment. As the record shows, the court considered the deposition testimony of three individuals, numerous exhibits, and multiple declarations. See Hibiscus Assocs. Ltd., 50 F.3d at 921. As for Foster's claim that the district court improperly disregarded the testimony of Foster's supervisor, Sutton Burleigh, we do not see how this testimony was probative of pretext, given that Burleigh's testimony was consistent with that of another employee and indicated that Burleigh did not know whether management narrowed down the timeframe of the falsification. Nor did the district court improperly discredit the testimony of Foster and King. Though it called Foster's assertions "self-serving," it did not disregard them, and simply noted that they did not meet her burden. As for King's testimony, it was largely consistent with the district court's opinion; the only difference was King's claim that BioLife's investigation was racially biased, which

was speculative and not based on personal knowledge, and thus insufficient to oppose a motion for summary judgment.  See Fed.R.Civ.P. 56(c)(4).

Second, we find no merit to Foster's argument that there were inconsistencies in BioLife's account sufficient for a reasonable jury to find pretext. Based on our review, there is nothing in the record to indicate that BioLife fired Foster for any reason other than the falsification issue.  Rather, manager Erick Stevick testified that he ultimately fired Foster, King, and Montgomery because his investigation narrowed down a time period when the shipping date could have been changed, and they were the ones with access to the folder during that time. He did not, however, ever determine who exactly had falsified the form.  Stevick's statement that he did not fire Foster, King, and Montgomery for falsification was not inconsistent with this testimony: While their termination notices indicated that a falsification issue was involved, they also clarified that the reason for termination was lost confidence in the employees due to possible falsification.  We do not analyze whether a reason was "prudent or fair," and BioLife did not contradict itself about its reason, so Foster has failed to show any discriminatory animus. Damon, 196 F.3d at 1361.

Furthermore, BioLife's reason for firing Foster was that management believed she falsified the form, and Foster failed to offer any evidence indicating this reason was false.  All that Foster has pointed to is evidence that she did not

7

falsify the form.    Because this evidence failed to suggest what management believed, it failed to satisfy the burden of showing "both that the reason was false, and that discrimination was the real reason."   St. Mary's Honor Ctr., 509 U.S. at 515.   We recognize that Stevick conceded that an employee who improperly changed a form with the intent to correct misinformation would be issued only a Level II noncomformance, which typically did not result in termination.   However, nothing in the record suggests that BioLife knew that Foster had been attempting to correct misinformation by changing the date -- indeed, Foster had denied to BioLife that she had changed the date and had denied that she had called the shipping center in an effort to ascertain the correct date.   Thus, there is no evidence to contradict BioLife's reason for her termination.

Finally, none of Foster's proffered comparators were similarly situated to her, and therefore their treatment did not show pretext.   Holifield, 115 F.3d at 1562.   Although other employees had failed to initiate an ENC in this instance and were not terminated, the investigation did not reveal that they were involved in falsifying the date here.   Falsification and failing to initiate an ENC are two separate issues, so the "quality and quantity" of these proffered comparators' misconduct was not identical to Foster's.   Maniccia, 171 F.3d at 1368-69.   As for employee Christopher Pruitt who allegedly falsified a date in another instance, he did not report to Stevick, and his discipline was handed down by a different

8

supervisor.  See Silvera, 244 F.3d at 1261 n.5.  Furthermore, Pruitt worked in a different department than Foster, with different job duties.  Therefore, Pruitt was not similarly situated to Foster in all relevant aspects, and was not a proper comparator.  Holifield, 115 F.3d at 1562.

In short, Foster did not show that there was a genuine issue of material fact as to whether BioLife's legitimate nondiscriminatory reason for terminating her was pretextual, and summary judgment was proper.

**AFFIRMED.**