Richard S. SILVERA, Plaintiff-Appellee-Cross-Appellant,

v.

ORANGE COUNTY SCHOOL BOARD, Defendant-Appellant-Cross-Appellee.

No. 99-15318.

United States Court of Appeals,

Eleventh Circuit.

March 20, 2001.

Appeals from the United States District Court for the Middle District of Florida.(No. 98-00082-CV-ORL-19B), Patricia A. Fawsett, Judge.

Before CARNES and RONEY, Circuit Judges, and O'KELLEY[*], District Judge.

CARNES, Circuit Judge:

A school board fired an employee who had been convicted of child molestation and who also had multiple arrests for violent assaults. One would think that would have been the end of it, since in any sane world school boards should not be required to employ convicted child molesters. But the fired employee made a federal case of it and managed to convince a judge and jury that he had been fired because of his race in violation of Title VII.

The school board appeals from the judgment against it, contending that the judge was wrong to let the case even go to a jury. The matter is complicated by the fact that the school board did not fire another employee of a different race who had also been convicted of child molestation, because even convicted child molesters are protected against racial discrimination in employment by Title VII. Nonetheless, we agree with the school board that the case should never have gone to the jury, because no reasonable person could find from the evidence that the reason the board fired the convicted child molester plaintiff was race. The board was and is entitled to judgment as a matter of law.

## I. BACKGROUND

### A. FACTS

On January 4, 1996, a local television station advised the Orange County School Board that two of its employees, Richard Silvera and Wayne Ritter, had arrest records for child molestation. The Board immediately began an investigation into the backgrounds of both employees.

---

[*]Honorable William C. O'Kelley, U.S. District Judge for the Northern District of Georgia, sitting by designation.

What the Board found is that Silvera, who is black, had been arrested four times. He was first arrested on March 4, 1979 for battery of his wife. He was arrested again on September 23, 1979, this time for lewd assault on a female child. The arrest report from that incident indicated that Silvera's wife had discovered him "with his pants down a little and his zipper opened" kneeling in front of his six-year-old step-daughter, who had no pants on. To that charge, Silvera pleaded no contest, was convicted, and received three years probation and a fine as punishment. Silvera was again arrested on August 7, 1995, this time for battery of his wife. His fourth arrest was on December 14, 1995, for aggravated assault of his son—Silvera allegedly threatened his son with a machete. That last criminal charge against Silvera was still pending at the time the Board took the action against him that gave rise to this lawsuit.

At roughly the same time, the Board also learned from its investigation that Ritter, who is white, and who is somewhat mentally retarded, had been arrested twice. He was first arrested in 1977 for lewd assault on a minor. He pleaded no contest to that charge, was convicted of it, and was put on probation. Ritter's alleged lewd assault occurred on school property and involved students of Orange County. Ritter was said to have engaged in graphic sexual discussion with young boys in a locker room, exposed and touched his genitals in their presence, made homosexual advances, and touched, or encouraged the boys to touch, their genitals. Ritter was arrested a second time on January 13, 1994, on a charge of driving under the influence. The Board's investigation led it to conclude that second charge against Ritter was probably unfounded.[1]

On January 5, 1996, Silvera met with Emma Brown Newton, the Board's Associate Superintendent for Human Resources, and at least one other official. Silvera admitted that he had been arrested on a child molestation charge sixteen years earlier. Newton then told Silvera that he was being suspended with pay pending an investigation and that he was entitled to have legal representation at their next meeting. Silvera was then escorted by Board officials through an assembled group of reporters and television cameras.

On January 10, 1996 Silvera and his attorney met with Newton and Ronald Blocker, the Board's Deputy Superintendent for Operations. Silvera provided his arrest records and claimed that he had fully disclosed his past arrests to Mack Wright, who had interviewed Silvera before he was hired by the Board on July 6, 1982, as an electric motor repair master. Silvera stated that Wright had told him then there was no problem regarding his prior arrests. Newton contacted Wright at some point after the January 10, 1996

---

[1]The Board concluded that the DUI charge against Ritter, which had been dismissed, was unfounded because its investigator learned that the arresting officer who thought Ritter was drunk did not realize that he was mentally retarded, and Ritter "blew a 0.00 on the intoximeter" after he was arrested.

meeting with Silvera, and Wright denied to Newton that Silvera had ever told him about the arrests. Newton and Blocker, in consultation with other officials, recommended to the Board that Silvera be fired. By unanimous vote the Board fired Silvera on February 13, 1996. The Board points out that Blocker and Newton, as well as Board member Kattie Adams, are black.

Newton met with Ritter on January 5, 1996, and, like Silvera, Ritter was suspended with pay pending the outcome of the investigation. Ritter, however, was not terminated and he retired sometime in 1997, having worked as a custodian in the school system since sometime in the 1970's.

The Board asserts that it fired Silvera because of his arrest records, including their frequency, recency, and violent nature. The Board asserts that it also would have fired Ritter, but believed it was bound by an agreement reached shortly after his first arrest in 1977, an agreement in which the Superintendent of Schools, the state attorney's office, and the Corrections Department agreed that Ritter would not be terminated as a result of that arrest and the ensuing conviction but that the Board would keep him away from children.

## B. PROCEDURAL HISTORY

In March 1996, Silvera filed a charge with the Equal Employment Opportunity Commission alleging unlawful racial discrimination. After the EEOC issued Silvera a right-to-sue letter, he filed suit in the United States District Court for the Middle District of Florida, claiming unlawful termination of his employment because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*.

The district court denied the Board's motion for summary judgment, and Silvera's race discrimination claim was tried to a jury with Silvera proceeding *pro se*. At trial, the Board proffered evidence in support of its stated legitimate, nondiscriminatory reason for firing Silvera: the nature, number, and recency of his various arrests.

The jury returned a verdict for Silvera, but declined to award compensatory damages. The district court entered judgment and awarded Silvera back pay of $75,593, front pay of $62,167, and interest. Silvera timely filed a motion seeking a new trial on compensatory damages only. The Board timely filed a renewed motion for judgment as a matter of law and made an alternative motion for a new trial. In support of those motions, the Board argued among other things that Silvera had failed to put forward sufficient evidence to permit the jury to find that the nondiscriminatory reasons the Board had proffered in explanation of its

decision to terminate Silvera, but not Ritter, were pretextual.[2] The district court denied both the principal and alternative motions, as well as Silvera's motion, and this appeal and cross-appeal followed.

## II. DISCUSSION

We review *de novo* a district court's denial of a defendant's renewed motion for judgment as a matter of law, and apply the same standards as the district court. *Sherrin v. Northwestern Nat'l Life Ins. Co.,* 2 F.3d 373, 377 (11th Cir.1993). Pursuant to those standards, we must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In the course of our review:

> [W]e consider all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party. If the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict, then the motion was properly granted. Conversely, if there is substantial evidence opposed to the motion such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions, then such a motion was due to be denied and the case was properly submitted to the jury.

*Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989) (footnotes omitted).

Pursuant to this standard, the nonmoving party must provide more than a de minimus level of evidence to survive a motion for judgment as a matter of law: "[T]here must be a substantial conflict in evidence to support a jury question." *Id.* (footnote omitted). We are required to consider all of the evidence in the light most favorable to Silvera and ascertain "whether or not reasonable jurors could have concluded as this jury did based upon the evidence presented." *Quick v. Peoples Bank,* 993 F.2d 793, 797 (11th Cir.1993) (citation and quotations omitted).

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where direct evidence of discrimination is unavailable, a Title VII plaintiff may nonetheless present circumstantial evidence of discrimination sufficient to create a jury question. In reviewing Title VII claims that are supported by circumstantial evidence, we use

---

[2]The Board also contends that the district court erred in denying it judgment as a matter of law on the grounds of res judicata and collateral estoppel relating to an arbitration proceeding Silvera filed. The Board further argues that it is entitled to a new trial, even if it is not entitled to judgment as a matter of law, on two grounds: (1) insufficiency of the evidence, and (2) prejudicial errors that occurred at trial. Due to our conclusion that the evidence was insufficient to permit the jury to find that the Board fired Silvera because of his race, we need not reach those issues or any issues raised by Silvera in support of his claim that he is entitled to a new trial on compensatory damages.

the familiar *McDonnell Douglas/Burdine* three-step burden-shifting framework. Under this framework, the plaintiff shoulders the initial "burden ... of establishing a prima facie case of racial discrimination." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). If a prima facie case has been shown, then the defendant must "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." *Id.* If this is accomplished, the plaintiff may then attempt to demonstrate that the proffered reason was in fact merely a pretext for the defendant's actions. *See Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

In deciding a motion by the defendant for judgment as a matter of law in a discrimination case where the defendant has offered nondiscriminatory reasons for its conduct, a court conducts a focused inquiry. The court must, considering all the evidence, ascertain whether the plaintiff has cast doubt on the defendant's proffered nondiscriminatory reasons sufficient to allow a reasonable factfinder to determine that the defendant's proffered "legitimate reasons were not what actually motivated its conduct." *Cooper-Houston v. Southern Ry. Co.,* 37 F.3d 603, 605 (11th Cir.1994) (citation omitted). "The district court must evaluate whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.' " *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir.1997) (citation omitted).

Applying that analytical framework to this case, we readily determine that the Board offered evidence showing legitimate, nondiscriminatory reasons for its decision to terminate Silvera, and not terminate Ritter. Specifically, the Board put on evidence that it terminated Silvera due to the nature (assault and child molestation) and number (four) of his arrests, as well as the recency of two of them (one was six months, and the other just two months, before his termination). The Board also put on uncontradicted evidence that it did not terminate Ritter as a result of his nineteen-year old lewd assault arrest and conviction, because the Board believed it was bound by an earlier agreement not to terminate Ritter on the basis of that.

Silvera attempted to show that the Board's proffered reasons were merely a pretext for its decision. He argued at trial and repeats before us that Ritter, a white employee, was arrested and convicted for the same conduct, lewd assault on a child, and yet Ritter was retained while he was terminated. To Silvera that means

he was similarly situated to a non-minority employee, yet subjected to disparate treatment. That could be an adequate basis for the jury's verdict, because the disparate treatment of similarly situated employees of different races is enough to support an inference of racial discrimination. The problem with Silvera's theory of the case, however, is with its premise that he and Ritter were similarly situated at the time the Board decided to terminate one but not the other.

"In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Jones v. Bessemer Carraway Med. Ctr.,* 137 F.3d 1306, 1311 (11th Cir.) (quoting *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997)), *opinion modified by* 151 F.3d 1321 (11th Cir.1998). "The most important factors in the disciplinary context ... are the nature of the offenses committed and the nature of the punishments imposed." *Id.* (citations and quotations omitted). In order to satisfy the similar offenses prong, the comparator's misconduct must be nearly identical to the plaintiff's in order "to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *See Maniccia v. Brown,* 171 F.3d 1364, 1368-69 (11th Cir.1999) (citation omitted); *see also Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 19 (1st Cir.1989) ("Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.").

Although Silvera claims that he was similarly situated to Ritter, key differences are readily apparent between the two. First, although Silvera and Ritter have in common the fact that they were arrested in the 1970's for lewd assault on a child, Silvera has three additional arrests for violent assaults. The fact that Silvera had multiple arrests is by itself sufficient to establish that he is not similarly situated to Ritter. *See Maniccia,* 171 F.3d at 1369 (female plaintiff in Title VII sex discrimination case not similarly situated to male employees who each committed a single policy violation where female plaintiff had committed at least four policy violations); *Bessemer,* 137 F.3d at 1312-13 (employees who allegedly committed single act of misconduct in one day not similarly situated to female plaintiff in Title VII race discrimination case who had engaged in multiple instances of misconduct on the same day). In order to meet the comparability requirement a plaintiff is required to show that he is similarly situated in all relevant aspects to the non-minority employee. *See Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997); *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 17 (1st Cir.1994); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992). Silvera cannot meet that requirement, because the number of arrests on his record exceeds by a factor of two

(if Ritter's DUI arrest is counted) or a factor of four (if it is not) those of his would-be comparator.[3]

The second significant difference between the two that prevents Ritter from being a valid comparator for Silvera is the fact that Silvera had three arrests for violent conduct, while Ritter had none. A third difference is that Silvera's most recent arrest was only two months before his termination, while Ritter's most recent one (if the DUI arrest is counted) was over two years behind him (nineteen years if the DUI arrest is not counted). All of these differences are undisputed in the record. The uncontradicted evidence also establishes that the Board believed it was bound by a pre-existing agreement not to terminate Ritter because of the arrest for lewd assault, and it establishes that no such agreement (or belief in one by the Board) existed with respect to Silvera. Ironically, the evidence concerning the old agreement not to fire Ritter because of his child molestation arrest and conviction was the linchpin of the district court's reasoning denying the Board's motion for judgment as a matter of law.

At trial, one school official testified that given Ritter's child molestation conviction she would have recommended that he be fired along with Silvera, but for the belief that the Board in existence nineteen years earlier had agreed not to fire Ritter for that reason. The district court focused on that testimony and concluded it effectively erased any difference between the criminal records of Silvera and Ritter. The court reasoned that because the jury could have credited that testimony and found Ritter's criminal record alone should have warranted termination, the difference between his record and Silvera's could not have been the reason Ritter was not fired.[4] As for the old agreement being the reason the two employees were treated differently, the district court knocked that possibility down, because the Board did not prove that there was a binding agreement not to fire Ritter.

Whether the district court's reasoning is logical is something we need not decide because, logical or not, the reasoning depends upon the factual premise that there is a basis in the evidence for the jury to

---

[3]We do not think that Ritter's DUI arrest is relevant for purposes of showing that he was similarly situated to Silvera. Even assuming for present purposes that DUI is comparable to crimes involving assault, the Board had good reason to believe (and the uncontradicted evidence is that it did believe) Ritter's DUI arrest was unfounded. *See supra* n. 1.

[4]An initial problem with the district court's reasoning is that it equates school officials with the Board, which is the actual decision maker, apparently assuming the Board would have rubber-stamped whatever the school officials recommended concerning Ritter. There is no evidence of that. Just because that school official and others might have changed their recommendations if the facts had been different does not mean the Board would have decided differently if presented with a different recommendation. For present purposes, we will ignore that flaw in the district court's reasoning and assume that the Board felt exactly the same as the school official who testified about the effect of the old agreement.

disbelieve the testimony that the Board felt bound by an old agreement not to fire Ritter for his child molestation conviction. After all, if the Board failed to fire Ritter because of its belief about the old agreement, that belief alone is a sufficiently race-neutral reason to explain the different treatment of Ritter and Silvera. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000) (the nondiscriminatory reason for the employer's action does not have to be the one proffered by the employer). Only if there is some reasonable basis in the evidence for finding that the Board did not believe itself bound by the agreement is a jury issue presented. There is no such basis. The testimony on the matter was unrefuted and uncontradicted.

The district court said the Board failed to prove at trial that there was a binding pre-existing agreement. That's where the district court missed the mark. Neither the plaintiff nor the court may recast the reason given by an employer for taking or failing to take a particular job action. *See Chapman v. AI Transport,* 229 F.3d 1012, 1030 n. 19 (11th Cir.2000) (en banc) ("Just as plaintiffs are not allowed to recast an employer's proffered reason, so also should courts refrain from doing so.") The issue is not whether the Board actually was legally bound by the old agreement not to fire Ritter; the issue is not even whether there was an old agreement. The issue, instead, is whether the Board thought that its predecessor had made such an agreement with Ritter which the Board was bound to follow. About that there was no dispute in the evidence. All of the evidence on the issue was that the Board thought there was an agreement and that it was bound by that agreement not to fire Ritter. There was no contrary evidence and thus no basis for a jury to find that this stated difference between Ritter and Silvera was pretextual.

Even if we believed, as the district court did, that the Board was not bound by an old agreement with Ritter, that would only establish the Board was mistaken, and an employer who treats two employees differently because of a mistaken belief in the existence of a neutral reason does not violate Title VII. *See Lee v. GTE Florida, Inc.,* 226 F.3d 1249, 1253 (11th Cir.2000) ("A plaintiff must show not merely that the defendant's employment decisions were mistaken, but that they were in fact motivated by sex."); *Alexander v. Fulton County, Ga.,* 207 F.3d 1303, 1339 (11th Cir.2000) ("A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race."); *Wolf v. Buss (America) Inc.,* 77 F.3d 914, 919 (7th Cir.1996) ("Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action.") (internal marks and citations

omitted).[5]

The district court gave one other reason for denying the Board judgment as a matter of law. It thought a jury reasonably could have determined that the Board's proffered reasons for terminating Silvera were pretextual because there was evidence from which the jury could have found the Board knew about Silvera's two arrests in the 1970's when it hired him in 1982. There was a conflict in the evidence about whether Silvera told Wright about his prior arrests during his 1982 job interview. Silvera indicated that he did, Wright's sworn statement insisted that he did not. For purposes of deciding whether the Board was entitled to judgment as a matter of law, the district court quite properly resolved that conflict in the evidence in favor of Silvera and took it as fact that Wright knew about those two arrests. But the court went beyond that by imputing Wright's knowledge to the Board and reasoning that if the Board constructively knew of Silvera's lewd assault arrest when it hired him in 1982, the Board's stated reason that it fired Silvera in 1996 for that same arrest must have been pretextual, or at least a jury could so find.

We disagree. To begin with, there is no evidence at all that Wright actually told the Board anything about Silvera's arrest. His sworn statement indicated that he did not. The district court overcame that obstacle to a judgment for Silvera by simply imputing the knowledge Wright had to the Board. Doing that was error, because it equates constructive knowledge with actual intent. Even assuming the Board that fired Silvera in 1996 was composed of exactly the same members as the Board that had hired him fourteen years earlier—which is unlikely—if the Board had no actual knowledge of Silvera's two arrests from the 1970's when it hired him in 1982, it did not actually know of those arrests at that time, and all the imputing in the

---

[5]Silvera claims disparate treatment only in regard to the Board's 1996 decision not to terminate Ritter because of Ritter's lewd assault arrest in the 1970's. Silvera has never claimed a violation of Title VII occurred because the Board made an agreement with Ritter shortly after his arrest in 1977 not to terminate him based on that arrest but made no such agreement with Silvera about his 1979 arrest when it hired him in 1982. The district court alluded to that arguable difference in treatment when it remarked about the "generous accommodations to Ritter" after his arrest was first brought to the Board's attention in 1977, as compared to the treatment Silvera received in 1996. But differences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination. *See Jones v. Gerwens,* 874 F.2d 1534, 1541 (11th Cir.1989) ("Courts have held that disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis."); *Cooper v. City of N. Olmsted,* 795 F.2d 1265, 1271 (6th Cir.1986) ("Although a change in managers is not a defense to claims of race or sex discrimination, it can suggest a basis other than race or sex for the difference in treatment received by two employees."); *Bessemer,* 137 F.3d at 1312 n. 7 ("Different supervisors may have different management styles that—while not determinative—could account for the disparate disciplinary treatment that employees experience."); *Tate v. Weyerhaeuser Co.,* 723 F.2d 598, 605-06 (8th Cir.1983) (fact that one manager may be more lenient than another may explain the different treatment that employees receive on a non-racial basis). In any event, because Silvera did not raise that claim in his complaint, did not argue it at trial, and has not raised it before us, we need not decide it.

world is not going to change that fact. Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent. *See Brungart v. BellSouth Telecomms., Inc.,* 231 F.3d 791, 800 (11th Cir.2000) (for purposes of Family and Medical Leave Act retaliation claim, knowledge of employee's protected conduct could not be imputed to decision maker from other corporate officials or supervisors who had knowledge of it); *Pressley v. Haeger,* 977 F.2d 295, 297 (7th Cir.1992) (stating, in employment discrimination case, that "[r]acial discrimination is an intentional wrong. An empty head means no discrimination. There is no 'constructive intent,' and constructive knowledge does not show actual intent.").

That is not the only problem with the district court's reasoning. It is undisputed that when Silvera told Wright in 1982 about his two arrests prior to that time, there was no public disclosure and no media attention. Contrast that with the situation that existed when the Board decided to fire Silvera in 1996. There had been public disclosure and there was intense media coverage of the story and of the Board meeting where the decision was made. After the local television station turned up the information about the child molestation records, a media frenzy ensued. The record shows, for example, that a horde of reporters pounced on Silvera after his January 5, 1996 meeting with Newton. Responding to media attention and the resulting perceived public pressure to take action against a convicted child molester may or may not be laudatory traits in a public board, but it is race neutral. *See Chapman,* 229 F.3d at 1030 ("An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.") (internal marks and citation omitted).

Finally, the district court's reasoning ignores the fact that, assuming Silvera told Wright about his arrest record in 1982, that record consisted of two arrests. When the Board made the decision to fire Silvera in 1996, his arrest record had doubled. In the intervening years, Silvera had been arrested two more times for violent crimes, and those two additional arrests were recent. Indeed, one of the arrests, which involved charges that Silvera held a machete to his son's face, was still pending at the time the Board decided to get rid of Silvera. The Board's proffered reason for firing Silvera after the television station brought the matter to public attention is the nature, number, and recency of Silvera's arrests. There were twice as many arrests then as in 1982, the additional arrests were for violent crimes, and they were recent.

### III. CONCLUSION

In short, Silvera failed to produce evidence sufficient to permit a reasonable factfinder to disbelieve the Board's proffered nondiscriminatory explanation for terminating him. Because of that failure, the Board

was entitled to judgment as a matter of law.  Accordingly, we REVERSE the entry of judgment in favor of Silvera, and we REMAND the case for entry of judgment in favor of the Board.