[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12479
Non-Argument Calendar
_____

D.C. Docket No. 0:11-cv-61574-RSR

ELZIE FULLER, III,

                                                        Plaintiff-Appellant,

versus

EDWIN B. STIMPSON CO. INC.,

                                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 23, 2015)

Before TJOFLAT, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Elzie Fuller, III, an African-American male, appeals the district court's grant

of defendant Edwin B. Stimpson Company, Inc.'s ("Stimpson Co.") motion for

summary judgment as to Fuller's claims alleging race discrimination in violation of

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a), and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10, arising out of his long-term employment with Stimpson and his termination in 2009 as part of a reduction in force ("RIF").  On appeal, Fuller argues that: (1) he established a prima facie case of race discrimination; and (2) the district court abused its discretion by denying his motion for reconsideration.  After thorough review, we affirm.

We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party.  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004).  Summary judgment is appropriate when there is no genuine issue of material fact.  Fed.R.Civ.P. 56(a).  A genuine factual dispute exists if the jury could return a verdict for the non-moving party.  Wilson, 376 F.3d at 1085.  A district court's denial of a motion for reconsideration is reviewed for abuse of discretion.  Corwin v. Walt Disney Co., 475 F.3d 1239, 1254 (11th Cir. 2007).

First, we find no merit to Fuller's race discrimination claim.  Title VII provides that it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race . . ."  42 U.S.C. § 2000e-2(a)(1).  The FCRA is modeled after Title VII, and claims brought under it are analyzed under the same framework, so FCRA claims do not need separate discussion and their outcome is the same as the federal

2

claims.  Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1271 (11th Cir. 2010).  In evaluating disparate treatment claims supported by circumstantial evidence, we use the framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Wilson, 376 F.3d at 1087.  Under McDonnell Douglas, the plaintiff must initially establish a prima facie case, which generally consists of the following: (1) the plaintiff was a member of a protected class; (2) he was qualified to do the job; (3) he was subjected to an adverse employment action; and (4) he was treated less favorably than similarly situated individuals outside his protected class.  Holland v. Gee, 677 F.3d 1047, 1055 (11th Cir. 2012).  "In order to satisfy the similar offenses prong, the comparator's misconduct must be nearly identical to the plaintiff's in order to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."  Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001) (quotations omitted).

In situations involving a reduction in force, a modified prima facie formulation may apply, which allows a case of discrimination to be established by presenting evidence showing, not dissimilar treatment, but that the employer intended to discriminate against the plaintiff in making the discharge decision.  See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1331 (11th Cir. 1998).  To establish intent, a plaintiff must proffer evidence that the defendant (1) consciously refused to consider retaining the plaintiff because of his race or (2) regarded race

3

as a negative factor in such consideration.  See Allison v. Western Union Tel. Co., 680 F.2d 1318, 1321 (11th Cir. 1982).

Executive Order 11246 prohibits federal contractors and subcontractors from discriminating in employment decisions on the basis of race, color, religion, sex, or national origin, and requires certain federal contractors and subcontractors to take affirmative action to ensure that an equal opportunity for employment is provided in all respects of their employment.  Exec. Order No. 11246 § 202(1), 41 C.F.R. § 60-1.1  (1965); see also  http://www.dol.gov/compliance/laws/comp-eeo.htm.   It requires government contractors and subcontractors to have in place an acceptable affirmative-action program that identifies problem areas.  See 41 C.F.R. § 60-1.3 (including subcontractors in the definition of "contractor"); id. § 60-2.17 (listing required elements of affirmative action programs).  In meeting this requirement, the contractor or subcontractor must "perform in-depth analyses of its total employment process to determine whether and where impediments to equal employment opportunity exist."  Id. § 60-2.17(b).  The contractor or subcontractor must evaluate, among other things,

1. The workforce by organizational unit and job group to determine whether there are problems of minority or female utilization (i.e., employment in the unit or group), or of minority or female distribution (i.e., placement in the different jobs within the unit or group);

2. Personnel activity (applicant flow, hires, terminations, promotions, and other personnel actions) to determine whether there are selection disparities; . . .

Id.  Affirmative-action programs must include an internal audit and reporting system that "[m]onitor[s] records of all personnel activity, including . . . terminations . . . , at all levels to ensure the nondiscriminatory policy is carried out."  Id. § 60-2.17(d).  Executive Order 11246 has the force and effect of law. United States v. New Orleans Pub. Serv., Inc., 553 F.2d 459, 465 (5th Cir. 1977),[1] vacated on other grounds, 436 U.S. 942 (1978).

Here, the district court did not err by concluding that Fuller failed to establish a prima facie case of race discrimination.  As for the four comparators Fuller identifies on appeal, only employee Jack Shuck was identified in Fuller's motion for partial summary judgment as a comparator regarding attendance.  In any event, Fuller was either late to work or left early on 57 occasions in 2008, whereas none of the four individuals identified here had more than 16 total late arrivals and early departures that year, so they are not valid comparators.  Silvera, 244 F.3d at 1259.

Moreover, the record does not support Fuller's contentions that (1) the court granted summary judgment without considering the statistical evidence and Dr. Pearson's analysis, and (2) Dr. Pearson's analysis supports a prima facie case of discrimination.  Instead, the court determined that, despite any statistical analysis

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

5

performed by Fuller's expert, Dr. Pearson, the actual decisions made by Stimpson Co. refuted discriminatory intent. As the district court determined, and the record revealed, the termination decisions that Stimpson Co. modified following a review of the Workforce Review spreadsheet -- which listed all employees and their department, job classification, race, gender, age, and years of service, among other information -- revealed that, if anything, being African-American was regarded as a positive factor in Stimpson Co.'s termination decisions. Thus, Fuller failed to establish the requisite discriminatory intent for a prima facie case of discrimination in a RIF. Allison, 680 F.2d at 1321.

As for Fuller's arguments that the statistical evidence and Fuller's seniority bear on the issue of pretext, the district court did not need to reach the pretext step of the test since Fuller did not establish a prima facie case of race discrimination. Wilson, 376 F.3d at 1087. In any event, Executive Order 11246 required Stimpson Co. to prepare the information contained in the Workforce Review spreadsheet, including its groupings of employees by race. See 41 C.F.R. §§ 60-2.1, 60-2.17. Therefore, the court properly concluded that Stimpson's creation of the spreadsheet could not serve as evidence of discrimination or pretext. Without the Workforce Review spreadsheet, and considering Fuller's poor attendance record in 2008, Fuller's seniority alone does not establish the requisite discriminatory intent for a prima facie case of discrimination in a RIF. Allison, 680 F.2d at 1321.

Accordingly, the district court properly granted summary judgment as to Fuller's race discrimination claim.

We are also unpersuaded by Fuller's claim that the district court abused its discretion by denying his motion for reconsideration. A court may only grant a Rule 59 motion based on "newly-discovered evidence or manifest errors of law or fact." Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007). "[A] Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." Id. (brackets in original) (quotations omitted).

Here, the record shows that Fuller did not present any newly-discovered evidence or manifest errors of law or fact in his motion for reconsideration. In particular, he failed to point out errors in the district court's original decision that would have changed its ultimate conclusion. Thus, the district court did not abuse its discretion in denying Fuller's motion for reconsideration.

**AFFIRMED**.

7