Duane BARTELS, Plaintiff-Appellant,

v.

**SOUTHERN MOTORS OF SAVANNAH, INC., a.k.a. Southern Motors Acura, Defendant-Appellee.**

**No. 16-11958
Non-Argument Calendar**

United States Court of Appeals, Eleventh Circuit.

(March 7, 2017)

5. Ms. Law concedes this point in her brief before this Court.

Brian J. Sutherland, Edward Daniel Buckley, Buckley Beal, LLP, Atlanta, GA, for Plaintiff-Appellant

Tracie Grove Macke, Joseph P. Brennan, Brennan Wasden & Painter, LLC, Savannah, GA, F. Michael Taylor, Hull Barrett, PC, Augusta, GA, for Defendant-Appellee

Before HULL, MARCUS, and FAY, Circuit Judges.

PER CURIAM:

Plaintiff Duane Bartels appeals the district court's order granting summary judgment in favor of his former employer, defendant "402 East Broughton Street, Inc.," doing business as Southern Motors Acura ("SMA"). After review of the record and consideration of the parties' briefs, we affirm.

## I. BACKGROUND

The district court recited at length the facts and procedural history of this case in its order granting defendant SMA's motion for summary judgment. Assuming the parties' familiarity with that order and with the record generally, we only briefly summarize the relevant background.

Defendant SMA is a car dealership owned and operated by the Kaminsky family, including Myron Kaminsky and his two sons, Adam Kaminsky and Ross Kaminsky. In 2004, plaintiff Bartels began working at defendant SMA as a wholesale parts salesman and was eventually promoted to general manager.

On October 12, 2012, plaintiff Bartels and his wife, who was pregnant, learned that their unborn child suffered from a serious bone disease. Bartels missed several days of work to attend medical appointments with his wife. Throughout this period, Bartels updated the Kaminskys with the details of his personal situation. On October 17, 2012, Bartels returned to work, but he indicated to the Kaminskys that he would need time off in the future to help his wife through the complicated pregnancy. Bartels did not request any specific days off.

On October 19, 2012, volunteers for the Historic Savannah Foundation ("HSF") were at defendant SMA's dealership preparing for a charity benefit being held there. Plaintiff Bartels approached Katherine Albert, an HSF volunteer, and expressed his dissatisfaction with the fact that Albert had not consulted with him while planning the HSF charity event. According to Albert, during the course of this conversation, Bartels used profanity and said otherwise "demeaning and embarrassing" things.[1] Albert complained about this incident to HSF's director, Terri O'Neil, who in turn contacted Myron Kaminsky. Bartels admits that Myron Kaminsky called him and instructed him to apologize to O'Neil. Bartels eventually called O'Neil to apologize.

Four days later, on October 23, 2012, Myron and Adam Kaminsky met with Bartels and informed Bartels that he was being terminated. At the short meeting, the Kaminskys made several statements expressing sympathy for Bartels and his personal situation. According to Bartels, Myron and Adam Kaminsky stated that Bartels did "nothing wrong" and that the termination was "purely a business decision." Myron Kaminsky said that he understood what Bartels was going through, and that they would give Bartels a three months' severance package. Adam and Ross Kaminsky had previously expressed their concern with Bartels's effectiveness as a general manager, and they agreed with their father's decision to terminate Bartels.

On November 13, 2012, Ross Kaminsky submitted a notice to the Georgia Department of Labor (the "DOL notice"), which listed the reasons for Bartels's termination. These reasons included "[c]ursing at and upsetting [a] member of [HSF] during fund raising event," failure to work

1. The district court described the Albert episode as follows:
According to Albert ... Plaintiff (1) used profanity when asking why he had not been given tickets to the event; (2) stated guests at his own social gatherings used flowerpots to relieve themselves; (3) used profanity when directing Albert not to move his desk for the event; and (4) complained to an assembled group of Defendant's employees about the need to coordinate within a short time frame.

SMA was entitled to rely on the good-faith belief that Bartels engaged in professional misconduct regardless of whether it knew every detail of the misconduct. See EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1176 (11th Cir. 2000).

well with others, failure to meet minimum production requirements, use of a company credit card for personal expenses, poor attitude, mistakes leading to lost revenue, and unapproved spending. Myron Kaminsky later confirmed that the termination decision was based solely on Bartels's inappropriate interaction with Albert.

In February 2013, after his daughter's birth, Bartels filed suit against SMA. In his complaint, Bartels asserted two claims pursuant to the Family and Medical Leave Act of 1993 ("FMLA") for retaliation and interference. SMA filed a motion for summary judgment, which the district court granted as to both claims.

On appeal, Bartels challenges the grant of summary judgment as to both FMLA claims.[2]

## II. THE FMLA STATUTE

Under the FMLA, employees are entitled to leave for specified family and medical reasons. See generally 29 U.S.C. § 2612. As relevant here, the FMLA provides that an employee is entitled to up to twelve weeks of leave each year to care for a spouse or child who suffers from a serious health condition. Id. § 2612(a)(1)(C). When the employee returns from such a period of leave, the employer must reinstate the employee to his previous position with the same benefits, pay, and other terms and conditions of employment. Id. § 2614 (a)(1).

It is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" these FMLA rights. Id. § 2615(a)(1). It is also unlawful for an employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. Id. § 2615(a)(2). An employee seeking to enforce the FMLA's substantive provisions may bring a private action against his employer. Id. § 2617. This Court has recognized two types of FMLA claims: retaliation and interference. Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1293 (11th Cir. 2006).

## III. RETALIATION CLAIM

In Count II of his complaint, Bartels asserted an FMLA retaliation claim, alleging that SMA terminated him in retaliation for his anticipated use of FMLA protected leave during his wife's pregnancy.

Where the plaintiff espouses a single-motive theory of FMLA retaliation and relies on indirect evidence of the employer's retaliatory intent,[3] we analyze his claim under the burden shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Hurlbert, 439 F.3d at 1297; see Quigg v. Thomas Cty. Sch. Dist., 814 F.3d 1227, 1238 (11th Cir. 2016) (holding that the McDonnell Douglas framework is appropriate for analyzing single-motive claims, but not mixed-motives claims). Under that approach, the plaintiff must first establish a prima facie case of retaliation by showing (1) that he engaged in statuto-

---

2. We review de novo the district court's grant of summary judgment, considering the evidence and the inferences therefrom in the light most favorable to the nonmoving party. Ellis v. England, 432 F.3d 1321, 1325 (11th Cir. 2005). Summary judgment is appropriate where the evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute where the evidence would allow a reasonable jury to find in favor of the nonmoving party. Ellis, 432 F.3d at 1325-26.

3. Bartels does not argue that he presented direct evidence of unlawful intent.

rily protected activity, (2) that he experienced an adverse employment action, and (3) that there is a causal connection between the protected activity and the adverse employment action. Hurlbert, 439 F.3d at 1297. The burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse action. Id. The plaintiff then bears the burden of showing that the employer's proffered reason is pretext for unlawful retaliation. Id.

We assume without deciding that plaintiff Bartels presented sufficient evidence to make out a prima facie case of FMLA retaliation. In turn, defendant SMA presented ample evidence that it terminated Bartels for a legitimate, non-retaliatory reason—to wit, Bartels's inappropriate behavior during the episode with Albert. The resolution of Bartels's retaliation claim thus turns on the issue of pretext.

To carry his burden on pretext, the employee must produce evidence from which a reasonable jury could find (1) that the employer's proffered reason was not the true reason for the adverse employment action and (2) that the decision was motivated by an illegal purpose. Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344, 1348-49 (11th Cir. 2007). The employee can prove pretext by identifying "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered reason. Brooks v. Cty. Comm'n of Jefferson Cty., 446 F.3d 1160, 1163 (11th Cir. 2006).

The district court did not err in determining that Bartels failed to establish that SMA's legitimate, non-retaliatory reason was pretextual. On this record, the evidence was insufficient to support a jury finding that the Albert incident was not the true reason for Bartels's termination and that the decision was motivated by an illegal purpose.

The DOL notice did list reasons other than the Albert episode for terminating Bartels, but the notice also clearly identified Bartels's comments to Albert as one reason for termination. That the DOL notice included other motivations might indicate that there were supplemental reasons for Bartels's termination, but it does not indicate that SMA shifted its reasons.

We recognize that the Kaminskys made statements expressing sympathy for Bartels and his personal situation. See Wascura v. City of South Miami, 257 F.3d 1238, 1246 (11th Cir. 2001) (stating that expressions of sympathy associated with termination are "weak circumstantial evidence" of discriminatory intent and that statements designed to "save face" cannot overcome the employer's legitimate reasons for termination). Bartels, however, points to no evidence directly indicating that the Kaminskys chose to terminate Bartels because of his future need for FMLA leave. See id.

In addition, the fact that Bartels apologized for his behavior does not create a genuine dispute of material fact regarding pretext. The apology and any subsequent positive response from Myron Kaminsky does not rebut the evidence indicating that SMA terminated Bartels for a legitimate reason. See Brooks, 446 F.3d at 1163 (stating that the employee must meet the employer's legitimate reason "head on and rebut it"). It merely shows that Bartels disagrees with SMA's resolution of the conflict, which is insufficient to create a genuine dispute of material fact. See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1088 (11th Cir. 2004) ("[A] plaintiff cannot recast the reason but must meet it head on and rebut it. Quarreling with that [legitimate, non-retaliatory] reason is not sufficient.") (citation omitted).

Also, contrary to Bartels's contention, the district court did not ignore evidence

of misconduct by other SMA managers. As the district court noted, the evidence pertaining to these other managers did not constitute effective comparator evidence because the other managers' conduct was not sufficiently similar to Bartels's conduct during the Albert episode. See Silvera v. Orange Cty. Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001) ("In determining whether employees are similarly situated ... it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.").

Two of the alleged comparators, Jarred Pratt and Dennis Purcell, did not engage in behavior that could be construed as direct mistreatment of a potential customer or third party. Evidence regarding their misconduct is thus not probative of pretext as to Bartels's termination. And manager Michael Rhinehart, another alleged comparator, merely had to "smooth things over" with customers who felt they had not gotten a favorable deal. This is not sufficiently similar to the offensive comments Bartels made to Albert. See id. The district court did not err in determining that this purported comparator evidence failed to rebut SMA's legitimate reason for terminating Bartels.

The district court also did not fail to consider "me too" evidence regarding the terminations of SMA employees Doug Thomson and Michael Johnson. The district court determined that the evidence regarding Thomson's termination was insufficient to indicate whether SMA had terminated Thomson for any improper reason. Importantly, Thomson admitted that he failed to meet SMA's expectations for productivity, indicating that Thomson was fired for a legitimate, non-retaliatory reason. Thomson's termination did occur after he took time off to care for his ill wife, but the evidence did not indicate whether this time off could even constitute protected leave under the FMLA.

■ As to Michael Johnson, SMA employee Fred Jacoby testified that he spoke to Bartels, who said that Myron Kaminsky told him to terminate Johnson because Johnson had heart problems. The district court did not err in determining that this statement was inadmissible hearsay. Myron Kaminsky's statement might have been admissible as an admission of a party opponent had it been introduced through the testimony of Bartels. See Fed. R. Evid. 801(d)(2). Because it was introduced through the testimony of Jacoby, however, who testified that Bartels told him what Myron Kaminsky said, the testimony constituted hearsay within hearsay. See Fed. R. Evid. 801, 805.

On appeal, Bartels does not argue that his statement to Jacoby falls within any established hearsay exception. See id. Rather, Bartels claims that this hearsay statement can be considered in passing on the motion for summary judgment "because it can be reduced to admissible form at trial." However, when Myron Kaminsky was asked whether he ever said that someone with heart issues could not work at SMA, he responded, "I don't believe I would ever say that." In light of Myron Kaminsky's testimony, Bartels has not shown that Myron Kaminsky would give testimony at trial corroborating Jacoby's statement. Thus, the district court did not err in refusing to consider the hearsay statement introduced by Jacoby's testimony about what Bartels said that Myron Kaminsky said. See Jones v. UPS Ground Freight, 683 F.3d 1283, 1293-94 (11th Cir. 2012) (noting that hearsay statements cannot be considered in passing on a motion for summary judgment where the declarant has given sworn testimony contradicting the hearsay statement).

For the first time on appeal, Bartels argues that (1) his FMLA retaliation claim should be analyzed under the mixed-motives theory of discrimination and (2) he showed that unlawful discrimination was a "motivating factor" in the adverse employment action. See Quigg, 814 F.3d at 1235 (discussing the mixed-motives theory as it applies in the context of Title VII and § 1983 discrimination claims). If the employee can show that an unlawful reason was a motivating factor, then the burden shifts to the employer to show that it would have made the same decision in the absence of the impermissible motivating factor. Id. at 1242 (articulating the "same decision" defense to a claim relying on the mixed-motives theory).

Even assuming arguendo that the mixed-motives approach is appropriate in the context of an FMLA retaliation claim, which we do not decide here, Bartels's claim fails for two reasons. First, because Bartels urges the application of the mixed-motives theory for the first time on appeal, we do not consider that issue here. See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004). Second, as an alternative ground, we conclude that Bartels's FMLA claims fail under the mixed-motives theory because there is no genuine dispute of material fact with respect to SMA's same-decision defense. That is, the only reasonable conclusion supported by the record is that SMA would have terminated Bartels because of the Albert incident regardless of whether Bartels indicated a need for FMLA leave. See Quigg, 814 F.3d at 1242.

For either reason, the district court did not err in granting summary judgment to SMA on Bartels's FMLA retaliation claim.

## IV. INTERFERENCE CLAIM

In Count I of his complaint, Bartels asserted an FMLA interference claim, principally alleging that SMA terminated him to avoid providing him with anticipated FMLA leave.

To prevail on a claim for FMLA interference, an employee must show that his employer denied him a benefit to which he was entitled under the FMLA. White v. Beltram Edge Tool Supply, Inc., 789 F.3d 1188, 1191 (11th Cir. 2015). The employee need not show that the employer intended to deny an FMLA benefit—the employer's motives are irrelevant in the context of an interference claim. Hurlbert, 439 F.3d at 1293. Where the employer can show, however, that it would have dismissed the employee regardless of the employee's request for FMLA benefits, the employer is not liable for FMLA interference. Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1236 (11th Cir. 2010). Thus, the employer is only liable for FMLA interference where the employee's need for FMLA leave was the proximate cause of the termination. Schaaf v. Smithkline Beecham Corp., 602 F.3d 1236, 1242 (11th Cir. 2010).

Here, we cannot say that the district court erred in granting summary judgment to SMA on Bartels's FMLA interference claim. The district court did not err by relying on its retaliation pretext analysis to grant summary judgment to SMA on Bartels's interference claim. It is true, as Bartels notes, that SMA bears the burden of showing, in relation to the interference claim, that it would have terminated Bartels regardless of his need for FMLA leave. Id. at 1241. But it is not improper burden shifting for the district court to consider the employee's inability to show pretext in relation to his retaliation claim in determining, for purposes of the interference claim, that the employer still would have terminated the employee for a reason unrelated to the FMLA.

Our previous decisions support the district court's mode of analysis here. In Wascura, this Court first determined that the employee failed to present evidence from which a reasonable jury could conclude that an employer's proffered legitimate reasons for termination were pretextual with respect to the employee's ADA claim. 257 F.3d at 1247. The Court went on to analyze the employee's FMLA interference claim, expressly taking into consideration the employee's failure to show pretext with respect to the ADA claim. We affirmed the grant of summary judgment to the employer on the employee's FMLA interference claim, stating:

> For the same reasons that we concluded that [the employee] failed to present evidence from which a reasonable jury could find that the [employer's] proffered reasons for her termination were pretextual with respect to her ADA claim, we conclude that [the employee] failed to present evidence from which a reasonable jury could find any causal connection between [the employee's] ... potential need to take time off ... and her subsequent termination.

Id. at 1248. Similarly, the district court here did not err in relying on Bartels's inability to show pretext in relation to his retaliation claim in determining that SMA met its burden of showing that it would have made the same decision anyway and thus was not liable for FMLA interference.

Separately, to the extent that Bartels contends that the district court erred in failing to consider his interference claim under the mixed-motives theory of causation, we summarily reject that argument. As stated in Part III, supra, Bartels did not raise this issue in the district court, and we thus do not consider it here. See Access Now, 385 F.3d at 1331.

Accordingly, there is no genuine dispute of material fact regarding SMA's non-FMLA reason for terminating Bartels. We affirm the district court's ruling on Bartels's interference claim.

## V. CONCLUSION

In light of the foregoing, we affirm the district court's grant of summary judgment in favor of defendant SMA on plaintiff Bartels's FMLA retaliation and interference claims.

**AFFIRMED.**