**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-14109

Non-Argument Calendar

————————————

SAMUEL WILKIE,

*Plaintiff-Appellant,*

*versus*

OUTOKUMPU STAINLESS USA, LLC,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:23-cv-00288-KD-M

————————————

Before JILL PRYOR, BRASHER, and WILSON, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Samuel Wilkie appeals from the district court's order granting summary judgment in favor of Defendant-Appellee Outokumpu Stainless USA, LLC (OTK), his former

employer, on his claims of discrimination under the Americans with Disabilities Act (ADA), and interference and discrimination under the Family and Medical Leave Act (FMLA).  On appeal, he raises three issues.  First, he contends that the district court did not correctly apply the *McDonnell Douglas*[1] test to his ADA discrimination claim, and in so doing, it improperly determined that he failed to point to similarly situated comparators and thus failed to establish a prima facie case.  Second, he contends that the district court incorrectly applied the convincing mosaic framework to his ADA discrimination claim, resulting in the court improperly determining that he could not establish pretext.  Finally, he argues that the district court erred in granting summary judgment on his FMLA claims because he presented sufficient evidence of pretext.  After careful review, we affirm.

## I.

We review the grant of summary judgment de novo.  *Anthony v. Georgia*, 69 F.4th 796, 804 (11th Cir. 2023).  Summary judgment should be granted only if there is no genuine dispute of material fact when viewing evidence in the light most favorable to the non-movant.  *Id.*  There is a genuine issue of material fact if sufficient evidence could be submitted to a jury who could return a verdict for the nonmoving party.  *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1284–85 (11th Cir. 1997).

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The ADA prohibits employers from discriminating against an employee on the basis of their disability. 42 U.S.C. § 12112(a); *see also Akridge v. Alfa Ins. Co.*, 93 F.4th 1181, 1191 (11th Cir. 2024). When evaluating ADA discrimination claims without direct evidence of discrimination, courts use the *McDonnell Douglas* burden-shifting framework, which requires the plaintiff to show a prima facie case of discrimination, then requires the defendant to proffer a nondiscriminatory reason for the employment decision, and finally requires the plaintiff to show that the proffered reason was pretextual. *Akridge*, 93 F.4th at 1191. A plaintiff makes out a prima facie case of ADA discrimination by showing that: (1) he has a disability; (2) he is a qualified individual under the ADA; and (3) his employer discriminated against him on the basis of that disability. *Id.*

The third prong requires a plaintiff to prove that he "was treated less favorably than a similarly situated, non-disabled person." *Id.* at 1194. A fellow employee is "similarly situated" when they: (1) "have engaged in the same basic conduct (or misconduct) as the plaintiff"; (2) "have been subject to the same employment policy, guideline, or rule as the plaintiff"; (3) "have been under the jurisdiction of the same supervisor"; and (4) "share the plaintiff's employment or disciplinary history." *Lewis v. City of Union City*, 918 F.3d 1213, 1227–28 (11th Cir. 2019) (en banc).

Here, OTK terminated Wilkie because of his conduct during an incident where a temporary contract employee, Harley Woods (Woods), had an itchy spot on her neck. Woods reported it to

Wilkie, the Shift Coordinator, and asked to go home. Wilkie advised her to go to fire and rescue medical personnel (Fire & Rescue). Woods refused because she was not an OTK employee, after which Wilkie gave Woods a topical cream and ice pack from a first aid kit. The correct course of conduct for a Shift Coordinator would have been to immediately notify the safety team and Fire & Rescue, and to not personally provide medical aid to the injured person.

The court correctly applied the *McDonnell Douglas* framework. Wilkie did not meet his burden of establishing a prima facie case of ADA discrimination because he failed to identify similarly situated comparators that experienced different treatment. Before the Woods incident, Wilkie received informal counseling instructing him not to provide first aid to other team members.[2] No other presented comparator received prior informal counseling against engaging in a specific behavior, let alone received such counseling and then affirmatively engaged in the same behavior, as Wilkie did. Another distinguisher for most of the presented comparators is that they were not subject to the same reporting policies as Wilkie in his position as Shift Coordinator. Therefore, all comparators are distinguishable.

---

[2] Wilkie claims that OTK's progressive disciplinary policy is such that his informal counseling should not be considered as part of his personal disciplinary history, but as evidenced by OTK's referencing it as a significant factor in his termination, Wilkie's informal counseling was considered part of his disciplinary history.

24-14109            Opinion of the Court            5

In properly applying the *McDonnell Douglas* test to Wilkie's claims, the district court did not err in granting summary judgment to OTK because Wilkie failed to identify similarly situated comparators and so failed to establish a prima facie case of ADA discrimination.

## II.

Wilkie's failure to produce a comparator does not doom his discrimination case because the *McDonnell Douglas* framework is not the only path to proving intentional discrimination. *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 946 (11th Cir. 2023). A "plaintiff will always survive summary judgment if he presents circumstantial evidence" in any form that creates a triable issue concerning the employer's discriminatory intent. *Id.* In these circumstances, we look beyond the prima facie case to consider all relevant evidence to decide the ultimate question—whether the plaintiff suffered from intentional discrimination. *Id.* at 947.

A plaintiff may establish a "convincing mosaic" by pointing to evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent might be inferred; (2) "systematically better treatment of similarly situated employees;" and (3) "evidence that the employer's justification is pretextual." *Akridge*, 93 F.4th at 1198.

"To show pretext, the employee must confront the employer's seemingly legitimate reason . . . 'head on and rebut it.'" *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1206 (11th Cir. 2013) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000)). It

is not enough for the plaintiff to "simply quarrel[] with the wisdom of that reason." *Id.* Plaintiffs can demonstrate pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Silvera v Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001). An employer may make an employment decision "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Phillips v. Legacy Cabinets*, 87 F.4th 1313, 1325 (11th Cir. 2023).

Here, OTK provided two nondiscriminatory reasons for firing Wilkie, both rooted in his role as Shift Coordinator during the Woods incident. First, he violated OTK's safety protocol by administering first aid to an employee and second, he failed to appropriately report an injury to Fire & Rescue. Wilkie had been individually counseled on following the safety protocol after a previous incident where he administered medical aid to someone with an injury. During the counseling, Wilkie was explicitly told to not administer first aid at the time of an injury and to follow the safety procedures and the reporting process.

As to administering first aid, Wilkie argues that there are exceptions for applying first aid on the floor in medical emergencies. The testimonies Wilkie referenced support this contention but further explain that an exception could apply during a medical emergency, such as if the injured person is bleeding out to a point where

they cannot assist themselves.  However, no evidence suggests that the injury in question was life-threatening or an emergency at the time Wilkie provided medical aid and failed to call Fire & Rescue.

As to reporting procedures, Wilkie contends that nonemergency incidents need not be reported to Fire & Rescue but fall under the "Green Card" protocol, under which Wilkie would simply write a green card to report the injury.  Even if the injury in question was not severe enough for Wilkie to report it to Fire & Rescue, there is no evidence that Wilkie alternatively followed the Green Card protocol.

Wilkie quarrels with OTK's wisdom in terminating him rather than rebutting OTK's reasons for his termination.  *Kidd*, 731 F.3d at 1206.  He fails to establish pretext and has not demonstrated that OTK's reasons for his termination were false and that the real reason was discriminatory.  Thus, we find no error in the district court's correct application of the convincing mosaic standard to Wilkie's ADA discrimination claim.

### III.

The FMLA recognizes two types of claims: interference and retaliation.  *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001).  To state an FMLA interference claim, a plaintiff must "demonstrate by a preponderance of the evidence that he was entitled to an FMLA benefit and was denied that benefit."  *Id.* at 1206–07.  Plaintiffs bringing interference claims are not required to make any showing regarding their employer's motives.  *Lapham v. Walgreen Co.*, 88 F.4th 879, 896 (11th

8                    Opinion of the Court                    24-14109

Cir. 2023).  However, where the plaintiff's claim is that he was unlawfully terminated due to exercising his FMLA rights, the defendant-employer can defend itself "by establishing that the employee would have been terminated anyway."  *Id.*

To state an FMLA retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him by taking an adverse employment action because he exercised his FMLA rights.  *Strickland*, 239 F.3d at 1207.  In FMLA retaliation cases, in the absence of direct evidence of the employer's intent, we apply the same burden-shifting test used in *McDonnell Douglas*. *Id.*

Here, the district court properly granted summary judgment in OTK's favor on Wilkie's FMLA claims.  As to his FMLA interference claim, the district court accurately found that OTK would have fired Wilkie regardless of whether he requested FMLA leave, as supported by OTK's termination reports.  As to his FMLA discrimination claim, the court accurately determined that Wilkie could not establish pretext because Wilkie failed to show that his termination for failure to follow procedures was false and the real reason was discriminatory.

**AFFIRMED.**